## RICHARD S. FROSBURG ET AL. *v.* STATE DEPARTMENT OF PERSONNEL

[No. 1150, September Term, 1976.]

*Decided July 11, 1977.*

The cause was argued before GILBERT, C. J., and MORTON and LISS, JJ.

*Sidney Blum* and *Wilson K. Barnes* for appellants.

*James F. Truitt, Jr., Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

The appellants in this appeal are Richard S. Frosburg and nine other employees of the Motor Vehicle Administration, Department of Transportation. The appellees are the State Department of Personnel, Henry C. Bosz, Secretary of Personnel, and Joan R. Nasdor, Employee Relations Arbitrator of the Department of Personnel.

The appeal is filed from an order of the Baltimore City Court (Greenfeld, J.) dismissing an appeal taken by the employees from an opinion and decision reached by the Arbitrator after a hearing on a Fifth (and final) Step Grievance Appeal. Appellants' appeal to this Court is filed pursuant to the Administrative Procedure Act.[1]

The facts in this case are not in dispute. The ten appellants at the time this litigation arose and for a number of years previously were employed as Drivers License Reviewers by the Motor Vehicle Administration. That

---

1. Md. Code (1957, 1971 Repl. Vol.) Art. 41, § 255.

classification had been created under State Civil Service regulations several decades ago and at the time of the dispute the appellants were paid the salary set in Salary Grade 10, providing for an annual salary of $7,672 to $10,800 (maximum reached in six years).

On December 3, 1971, pursuant to his statutory power and obligation,[2] Bosz created two new classifications of employees. In each of these new classes, a minimum educational requirement was a Bachelor or Juris Doctor Degree in law from an accredited law school. This was not a requirement for employment as a Drivers License Reviewer.

When appointments were made to the new positions of Hearing Officers I and II the work assigned to be performed by them was essentially the same as that performed by the Drivers License Reviewers. The same type of cases were heard and decided by the employees interchangeably without regard to whether the employee did or did not have a law degree. While the employees were in fact performing substantially identical work the Hearing Officers were being paid at Salary Grade 15 and the Drivers License Reviewers at Salary Grade 10. This situation resulted in the employees designated as Drivers License Reviewers filing two grievances in which they alleged as follows — that the specifications creating Hearing Officers I and II were class-act discriminatory in that the minimal education requirements precluded the Drivers License Reviewers from being considered for the new positions although the nature of work provisions listed in detail types of work that the Reviewers had performed satisfactorily in the past; and secondly, the Reviewers were being underpaid by reason of their classification and the work they were required to do.

Thereafter the grievances moved through the bureaucratic jungle until reaching the nirvana, the "Fifth Step," the final

---

**2.** Md. Code (1957, 1972 Repl. Vol.) Art. 64A, § 16, provides, in part, that the Secretary has the power "to establish classes and classify therein all positions in the classified service (in the State Government) and shall, from time to time, thereafter as may be necessary, establish additional classes and classify therein new positions created, and may combine, . alter or abolish existing classes." See also Md. Code (1957, 1972 Repl. Vol.) Art. 64A, §§ 1-49.

adjudicatory hearing presided over by the Arbitrator in this case, Joan R. Nasdor. A full hearing was held before her, testimony was taken, documents were offered into evidence, and arguments submitted. The Arbitrator rendered her written opinion and decision on November 13, 1974. In her opinion the Arbitrator noted that the Motor Vehicle Administration had employed Drivers License Reviewers for some 30 years without requiring a law degree for the job. Some of the Reviewers had performed services identical to those of the Hearing Officers for more than ten years without such a degree. She found that the new employees, Hearing Officers I and II, performed the same function as the Reviewers but at substantially higher salaries. She recognized that salary adjustment should be made for the Reviewers but declined to decide the "best course of action to alleviate the inequity" until a pending study had been completed.

The appellants appealed from this decision to the Baltimore City Court (Murphy, J.) and also filed a petition for a writ of mandamus to compel the Arbitrator to decide the case. The case was remanded to the Arbitrator with instructions that she render a final determination on the Fifth Step Grievance after a study by the Classification and Compensation Division had been completed. That study found that the differences between the duties and responsibilities assigned to the Reviewers and Hearing Officers were minimal, occurring in something less than 1% of the cases decided by them, and that the Reviewers should be upgraded to reflect the appropriate salary level for the duties which they were required to perform.

A second hearing was held before the Arbitrator and on September 4, 1975, she rendered a written opinion in which she stated: "Logic and reason compel and persuade by abundantly clear and convincing evidence that the Drivers License Reviewers should be reclassified to Grade 15 effective immediately with this order." Her order also abolished the classification of Drivers License Reviewer. The Arbitrator did not, however, order that back pay be awarded the appellants from the time of filing the first grievance to

the date of reclassification, nor was any explanation given as to the reason for the Arbitrator's failure to award back pay. The entire issue of back pay was ignored by the Arbitrator's decision and order and from the record we are unable to determine whether that issue was ever considered by her.

The appellants appealed to the Baltimore City Court on the sole issue of the failure of the Arbitrator to award back pay. The matter came on for hearing before the trial court, arguments were made and memoranda were submitted. It was at this point in the proceedings that the defense of sovereign immunity was raised for the first time on behalf of the State agency. The trial court concluded that the allowance of back pay was barred by sovereign immunity and dismissed the appeal. It is from that order of dismissal that this appeal was seasonably filed.

The appellants urge that the trial court erred in holding that the doctrine of sovereign immunity barred their recovery of the retroactive pay which they claimed was due them from the time of filing the first grievance on December 13, 1972 to September 4, 1975, when the appellants were reclassified at the Grade 15 salary level.

The doctrine of sovereign immunity originated in feudal England on the theory that the highest feudal lord was not subject to suit in his own courts. The doctrine was firmly embedded in the common law and was adopted by the new nation when the American democracy was established.[3]

A period of ferment ensued before the status of the doctrine in the law of the land was firmly established. In Maryland by Chapter 53 of the Laws of 1786 the General Assembly adopted a statute which stated "that any citizen of this State, having any claim against this State for money may commence and prosecute his action at law for the same against this State as defendant." The Act provided for juries to try the issues and the power of the jury to award "such

---

**3.** We wish to acknowledge the excellent comment, *The State as a Party Defendant: Abrogation of Sovereign Immunity in Tort in Maryland*, 36 Md. L. Rev. 653 (1977).

damages as they think just, and the same shall be paid by
the State." That statute was repealed by Chapter 210 of the
Acts of 1820. *See Calvert Associates v. Department of
Employment and Social Services,* 277 Md. 372, 357 A. 2d 839
(1976).

The Supreme Court in 1793 decided in *Chisholm v.
Georgia,* 2 U. S. (2 Dall) 419, 1 L. Ed 440, that Article III,
section 2 of the United States Constitution gave jurisdiction
to federal courts to adjudicate "controversies between a
State and Citizens of another State" irrespective of an
assertion of sovereign immunity by the defendant State. The
first ten amendments to the Constitution had been adopted
as the Bill of Rights as part of the original United States
Constitution. The reaction to *Chisholm* was so strong and
immediate that the Eleventh Amendment [4] restricting the
judicial power of the Federal Government was adopted in
1798. That amendment effectively reversed the Supreme
Court's holding in *Chisholm.*

The Court of Appeals in its decision in *State v. Baltimore
and Ohio R. R. Co.,* 34 Md. 344, 374 (1871), stated that
sovereign immunity "belongs to the State by reason of her
prerogative as a sovereign, and on grounds of public policy.
Parties having claims or demands against her must present
them through another department of the Government — the
Legislature — and cannot assert them by suit in the courts."
That rationale has been followed consistently in succeeding
Maryland cases. *See Godwin v. County Commissioners,* 256
Md. 326, 260 A. 2d 295 (1970), where the Court of Appeals in
an extensive discussion of the doctrine stated:

> "As applied in Maryland, the doctrine of
> sovereign immunity is not only applicable to the
> State, itself, as a governmental agency, but is also
> applicable to its agencies and instrumentalities,
> including its municipal political sub-divisions, if

---

4. The Eleventh Amendment provides, "The judicial power of the United
States shall not be construed to extend to any suit in law or equity,
commenced or prosecuted against one of the United States by Citizens of
another State, or by Citizens or subjects of any Foreign State."

engaged in a governmental function as an agent of the State, unless the General Assembly either directly or by necessary implication has waived the immunity." *Id.* at 334, 260 A. 2d at 299.

*See also Stanley v. Mellor*, 168 Md. 465, 178 A. 106 (1935); *Red Star Line v. Baughman*, 153 Md. 607, 139 A. 291 (1927).

In *University of Maryland v. Maas*, 173 Md. 554, 197 A. 123 (1938), the Court of Appeals held that absent legislative authority and appropriations or provisions for the payment of damages, a suit for damages could not be maintained against the State or one of its agencies. It said at p. 559:

"So it is established that neither in contract nor tort can a suit be maintained against a government agency, first, where specific legislative authority has not been given, second, even though such authority is given, if there are no funds available for the satisfaction of the judgment, or no power reposed in the agency for the raising of funds necessary to satisfy a recovery against it."

Eminent co-counsel for the appellants, Wilson K. Barnes, formerly an Associate Judge of the Maryland Court of Appeals, spoke for that Court in a case involving the doctrine of sovereign immunity in Maryland, *Jekofsky v. State Roads Commission*, 264 Md. 471, 287 A. 2d 40 (1972). In upholding the doctrine Judge Barnes said:

"Quite apart from our prior decisions, it is desirable and in the public interest that any change in the doctrine of sovereign immunity should come from the legislative branch of the State Government rather than from the judicial branch inasmuch as there are fiscal considerations, administrative difficulties and other problems in balancing the rights of the State and its agencies with new possible rights of the individual citizens, which can far better be considered and resolved by

the legislative branch than by the judiciary of the State." *Id.* at 474, 287 A. 2d at 42.

The Court of Appeals has recognized the fact that the doctrine of sovereign immunity has been under attack by the legal commentators [5] but has remained steadfast in its conclusion that in Maryland, at least, it is a viable defense until the legislature declares otherwise.

Two cases dealing with the doctrine of sovereign immunity were recently decided by the Court of Appeals. Judge Singley in *American Structures v. City of Baltimore,* 278 Md. 356, 364 A. 2d 55 (1976), stated:

"In Maryland the rule of our cases is clear. If an action is brought for a money judgment in contract or in tort against the State or an agency of the State without the State's consent, actual or implied, it must be defended on the ground of sovereign immunity, which cannot be waived unless funds have been appropriated for the purpose or the agency can provide funds by taxation . . . ." (Citations omitted) *Id.* at 359, 364 A. 2d at 56.

In *Board of Trustees of Howard Community College v. John K. Ruff, Inc.,* 278 Md. 580, 366 A. 2d 360 (1976), Judge Orth, speaking for the Court, reaffirmed the conclusion reached in *American Structures.*[6]

This brings us then to a consideration of the specific factual situation presented by this appeal. The record makes it clear that the trial court concluded, as did the Arbitrator, that the appellants had been improperly classified in the

---

**5.** See Clarke, *Municipal Responsibility in Tort in Maryland,* 3 Md. L. Rev. 159 (1939); Borchard, *Government Liability in Tort,* 34 Yale L. J. 1 (1924); Prosser, *Law of Torts* §§ 131 and 975-87 (4th ed.).

**6.** That the Legislature is aware of the problems created by the application of the doctrine is evidenced by the recent enactment of Chapter 450 of the Laws of Maryland effective July 1, 1976, which provides that in the absence of a provision to the contrary neither the State, its officers, departments, agencies, boards and commissions, nor any municipal corporation or unit of municipal government, nor any county or unit of county government may raise the defense of sovereign immunity in an action based on a certain written contract brought within one year after the claim arose or the contract was performed whichever is later.

Grade 10 category for several years. The appellants urge, therefore, that the legal proposition that an improperly discharged or demoted public employee is entitled, upon reinstatement, to back pay for the period of improper discharge or demotion is dispositive of this case. *People, ex rel. Bourne v. Johnson*, 32 Ill. 2d 324, 205 N.E.2d 470 (1965); *Rozmierski v. Newark*, 42 N.J. Super 14, 125 A. 2d 747 (1956 Sup. Ct.); *Craigie v. City of New York*, 114 App. Div. 880, 100 N.Y.S. 197 (1906 Sup. Ct., App. Div.). *See also* 4 McQuillen, *Municipal Corporations* §§ 12.188, 12.206 and 12.270 (3rd ed. 1951). They suggest that there is no conceptual difference between the improper discharges and demotions (involved in the cases cited in McQuillen, *supra*) and the improper classifications in the case at bar.

There are two reasons why this contention is not correct. First, the cases cited by the appellants all concern themselves with discharge, suspension and demotion. In this case, however, we are not considering a claim that the appellants have been denied the benefits of a position to which they were appointed. Instead, the contention is that the appellants have been denied the benefits of the position to which they should have been, but were not, appointed. There is a discernible difference under the Maryland Merit System between an improper discharge, suspension or demotion and an improper classification. Procedures for discharge, suspension and demotion are specifically set out in §§ 31, 33 and 36 of Article 64A and such actions may be taken only for cause. The right to a hearing is specifically granted in these types of cases. No such provision is made by statute in the matter of wrongful classification. The only redress is contained in Department of Personnel Policy No. 9 adopted by Executive Order of the Governor (Maryland Code (1977 Repl. Vol.) Vol. 9A at pp. 612-14,[7]) which sets up the Grievance Procedure. It should be noted further that

---

7. The current grievance procedure was promulgated by an Executive Order of Governor Marvin Mandel and was designated as Personnel Policy No. 9 adopted on July 3, 1974. In the 1977 session of the Maryland General Assembly, Senate Bill 677 codifying the State Grievance Procedure was adopted, signed by the Governor and will become effective July 1, 1977. Essentially the statute codifies Personnel Policy No. 9.

discharge, suspension and demotion are distinguishable from improper classification since the former represent affirmative actions of a punitive nature taken by an agency against an employee, while misclassification is, at the most, inaction on the part of the State rather than an affirmative attempt to alter the employee's status.

The established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it. *United States v. McLean*, 95 U. S. 750, 24 L. Ed. 579 (1876); *Ganse v. United States*, 180 Ct. Cl. 183, 376 F. 2d 900 (1967). Secondly, the appellants' cases do not involve circumstances in which the defense of sovereign immunity was raised.

Appellants contend that the doctrine of sovereign immunity is inapplicable because the State failed to raise the defense by appropriate motion, and more importantly, the defense is waived because of the Administrative Procedure Act. Md. Code (1957, 1971 Repl. Vol.) Art. 41.

To appellants' contention that the defense of sovereign immunity was not properly raised by the appellees below, there are several answers. Maryland Rule 323 a. sets out those defenses which constitute grounds for a preliminary objection. Included among these defenses is that of "[g]overnmental immunity when the party raising the defense is a governmental body or an agency thereof." Section b. of Rule 323 provides that "[m]otions raising defenses of want of necessary parties, governmental immunity or lack of jurisdiction over the subject matter *may be filed at any time.* Motions raising any of the other defenses enumerated in section a of this Rule shall be filed before any other pleading is filed, and unless so filed, the defense shall be deemed to have been waived." (Emphasis supplied). Even if the State had never raised the defense, it could have been raised by the trial court or this Court, on appeal, *sua sponte.* As Judge Orth said in *Board of Trustees v. Ruff, supra,* at 583, 366 A. 2d at 362:

> "*It is of no moment that the matter of sovereign immunity was not raised below by the pleadings or otherwise.* We made clear in *Bd. of Education v.*

*Alcrymat Corp.*, 258 Md. 508, 516, 266 A. 2d 349, 353 (1970), that '... the law is well established that counsel for the State or one of its agencies may not either by affirmative action or by failure to plead the defense, waive the defense of governmental immunity in the absence of express statutory authorization, or by necessary implication from a statute ....' We must consider whether the doctrine of sovereign immunity is applicable in this case even though it was not previously raised by the parties." (Emphasis supplied)

We find no merit in the appellants' contention that the defense of sovereign immunity was not seasonably interposed.

The appellants have strenuously argued in their brief and in oral argument before us that the adoption of the Administrative Proceedings Act amounted to an implied waiver of the defense of sovereign immunity. They have cited a number of Federal cases to substantiate this position and urge that the Federal Administrative Procedure Act is analogous to that adopted in Maryland and that we should follow the Federal decisions in this area of the law. Unfortunately, the appellants must perforce find themselves "hoist with [their] own petard." [8] There are two cases which we find to be almost exactly on point and dispositive of the issue in this case.

In *United States v. Testan*, 424 U. S. 392, 96 S. Ct. 948, 47 L.Ed.2d 114 (1976), the Supreme Court had before it a case in which respondents, government trial attorneys with Civil Service grade GS 13 classifications, requested their employing agencies to reclassify their position to grade GS 14. They contended that their duties and responsibilities met the requirements for the higher grade and were identical to those of other trial attorneys classified as GS 14 in another agency, and under the principle of equal pay for

---

8. "For 'tis the sport to have the enginer
Hoist with his own petard"
Shakespeare, Hamlet III, iv, 206.

substantially equal work, they were entitled to the higher classification. Their agency and the Civil Service Commission denied reclassification. The attorneys then sued the Government in the Court of Claims seeking reclassification and back pay computed at the difference between salary at GS 13 and GS 14 levels from the date of the first denial. The trial judge denied back pay but found that the Civil Service Commission's refusal to classify the attorneys to GS 14 was arbitrary. On appeal the attorneys argued that the refusal of the Court of Claims to award back pay left them remediless. Mr. Justice Blackmun speaking for a unanimous Court said at 403, 96 S. Ct. at 955, 47 L.Ed.2d at 124:

"The situation as we see it, is not that Congress has left the respondents remediless, as they assert, for their allegedly wrongful civil service classification, but that Congress has not made available to a party wrongfully classified the remedy of money damages through retroactive classification. There is a difference between prospective reclassification, on the one hand, and retroactive reclassification resulting in money damages on the other . . . .

Additional remedies of this kind are for the Congress to provide and not for the courts to construct." *See Edelman v. Jordan,* 415 U. S. 651, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974).

In discussing the issue of waiver of sovereign immunity Justice Blackmun opined at 400-01, 96 S. Ct. at 954, 47 L.Ed.2d at 122:

"In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity, and we regard as unsound the argument of *amici* that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation."

The Court discussed the effect of the Back Pay Act, 5 U.S.C. § 5596(b), a narrow statute which provides "a monetary remedy for wrongful reductions in grade, removals, suspensions and 'other unwarranted and unjustified actions affecting pay or allowances [that] could occur in the course of reassignments and change from full-time to part-time work.' " *Id.* at 405, 96 S. Ct. at 957, 47 L.Ed.2d at 125.

The Court stated the rule to be:

> "that the federal employee is entitled to receive only the salary of the position to which he was appointed, even though he may have performed the duties of another position or claims that he should have been placed in a higher grade. Congress did not override this rule, or depart from it, with its enactment of the Back Pay Act. It could easily have so provided had that been its intention." *Id.* at 406, 96 S. Ct. at 957, 47 L.Ed.2d at 126.

The Supreme Court concluded that there was no substantive right in the respondents for back pay for the period of their claimed wrongful classifications.

A case factually even closer to the case sub judice was decided in the United States District Court for the District of Columbia in *McNutt v. Hills,* 426 F. Supp. 990 (1977). In that case Judge Charles R. Richey had before him an action filed by a blind employee of the Department of Housing and Urban Development who sought declaratory and injunctive relief and back pay, applicable on a department-wide level, as a result of the Department's alleged failure to meet affirmative obligations toward physically handicapped employees. Cross motions for summary judgment were filed and Judge Richey held that jurisdiction over the case existed pursuant to the provisions for judicial review in the Federal Administrative Procedure Act; that sovereign immunity did not bar the granting of prospective relief, including prospective promotion, but that sovereign immunity would bar the award of back pay.

After a general discussion of the background of the

sovereign immunity doctrine, Judge Richey discussed the effect of the doctrine on the plaintiff's request for back pay. He said at 1001:

"Plaintiff's request for back pay pursuant to retroactive promotion would, however, be barred by sovereign immunity under the principles discussed above, unless that immunity is waived. Such a waiver must be explicit: a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.' *Testan*, 424 U.S. at 399, 96 S.Ct. at 954. . . . Preliminarily, it must be noted that neither the APA nor 28 U.S.C. § 1361, the statutes conferring jurisdiction in this case, constitutes a waiver of sovereign immunity for purposes of obtaining a retroactive award of salary. While the APA, as noted above, constitutes a general waiver of sovereign immunity for purposes of initial access to the Court in cases seeking judicial review of agency action, the APA 'by itself, is not a waiver of sovereign immunity in suits seeking money damages against the United States.' *Scanwell Laboratories, Inc. v. Thomas*, 172 U.S. App. D.C. 281, 521 F.2d 941, 948 (1975), *cert. denied*, 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976). *See Warner v. Cox*, 487 F.2d 1301 (5th Cir. 1974)."

In holding that the physically handicapped employees who alleged discrimination could not be awarded back pay to compensate them for the discrimination, Judge Richey, relying principally on *Testan, supra,* ruled that in the absence of a specific provision waiving sovereign immunity the plaintiffs could not maintain their suit for back pay.

We think in the absence of a specific waiver of sovereign immunity in the Maryland Administrative Procedure Act that that defense is available to the State just as it is to the Federal government under its Administrative Procedure Act. We hold that in the absence of proof of a specific statutory waiver and of a showing that there were funds

available from which a monetary judgment could be paid that this suit for back pay is an attempt to recover unappropriated funds from the State Treasury and must perforce be dismissed.

The appellants, as an additional ground for their contentions, suggest that the maxim "Equity regards as done what ought to be done" applies. They suggest, and cite a number of cases [9] in support of the contention that the State ought not to be permitted to be unjustly enriched by having the benefit of appellants' services at a pay rate less than that to which they are entitled for the work performed. They concede that they have been unable to find a case factually similar to the case at bar in which the maxim has been applied. We have carefully read the cases cited and find them factually inapposite.

The appellants included in their brief cases in which an arbitrator had made an award of back pay in other disputes involving various State departments. None of this evidence was submitted to the trial court in the hearing before Judge Greenfeld. The applicable rule is that the record on appeal is confined to matters that occurred at the time of the hearing before the Arbitrator or before the trial court on appeal. If the matter included in the appellants' brief was not before the trial court, it may not be considered by us. We are compelled to ignore that portion of the brief which attempts to supplement the record by adding information concerning these prior decisions. *See* Rule 1028; *Community Realty Co. v. Siskos*, 31 Md. App. 99, 354 A. 2d 181 (1976). Appellants suggest that the additional information should be considered by us in support of their contention that when an award of back pay was found to be appropriate, the Department of Personnel accepted its implementation as a ministerial duty. We have considered the authorities cited in support of this legal proposition by the appellants but do not find them to

9. *See* Peninsula Methodist Homes v. Cropper, 256 Md. 728, 261 A. 2d 787 (1970). Newark Trust Co. v. Talbot Bank, 217 Md. 141, 141 A. 2d 516 (1958); Johnson v. Long, 174 Md. 478, 199 A. 459, 116 A.L.R. 617 (1938); Blum v. Fox, 173 Md. 527, 197 A. 117 (1923); Reliance Insurance Co. v. Bennington, 142 Md. 390, 121 A. 369 (1923), Sewell v. Slingluff, 62 Md. 592 (1884).

be persuasive. We think *Williams v. Fitzhugh,* 147 Md. 384, 128 A. 137 (1925), is dispositive of this contention. In *Williams* a teacher sued the Normal School Board of Trustees and the State Superintendent of Schools for breach of contract. The employee argued that he was simply attempting to require the performance by the appellees of a duty imposed on them by law to pay the appellant money appropriated by the Legislature as pay for the position which he held. In rejecting the appellant's contention on the theory of sovereign immunity because the Board had no means to pay a judgment beyond the amount it received from the State Treasury the Court said:

> "Some of the cases which the appellant relies upon were concerned with the enforcement by mandamus of the performance of ministerial duties. If it could be shown that there is in the custody of state officials, not amenable to suit at law, a salary fund to which the appellant is entitled, and the payment of which is a clear legal duty, not involving the exercise of discretion, the writ of mandamus might be available to enforce the asserted right. But that question is not now before us for decision." *Id.* at 388, 128 A. at 138.

In the case sub judice the appellants have shown neither a clear legal duty on the part of the Department of Personnel to pay back pay under the circumstances of this case, nor have they indicated to the trial court a specific sum or fund from which they are entitled to be paid.

It seems clear from the reading of the record that there was an inordinate delay in the resolution of the appellants' complaints most of which may be fairly laid at the door of the State. Whether this is likely to lead to sympathetic consideration by the Legislature if the matter is referred to them is, of course, not for us to speculate.

*Order of dismissal affirmed.*
*Costs to be paid by appellants.*