## SHERIFF OF BALTIMORE CITY *v.* THOMAS ABSHIRE

[No. 180, September Term, 1979.]

*Decided December 5, 1979.*

The cause was argued before GILBERT, C. J., and MELVIN and MASON, JJ.

*Robert A. Zarnoch, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*Herbert R. Weiner* and *Jana R. Barnett,* with whom were *Steinberg, Schlachman, Potler, Belsky & Weiner, P.A.* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The Sheriff [1] of Baltimore City is of the mind that Thomas Abshire should not be allowed to continue employment as a deputy sheriff, so the Sheriff preferred charges against Abshire before the Secretary of Personnel of the State of Maryland. Specifically, Abshire was alleged by the Sheriff to have violated State Employee Personnel Rules .47 B and D. COMAR 06.01.01.47 B, D. Those two sections of the Rule provide:

"B. That the employee has been wantonly careless or negligent in the performance of his duty or has used unwarrantable or excessive force in his treatment of public charges, fellow employees, or other persons.

. . .

D. That the employee has violated any lawful official regulation or order or failed to obey any lawful and reasonable directive given by his superior officer when such violation or failure to obey amounts to insubordination, a serious breach of discipline which may reasonably be expected to result in lower morale in the organization or to result in loss or injury to the State or public."

A hearing was held before the Secretary's designated representative on July 10, 1978. As a result of that hearing, the Secretary determined "that the charges against Abshire have not been sustained by a preponderance of the evidence." He ordered Abshire "returned to duty with full back pay and benefits. . . ."

In so holding, the Secretary was critical of the Sheriff's suspending Abshire on May 9, 1978, and simultaneously

---

1. The origin of the ancient office of Sheriff seems to have been lost in antiquity, but its prototype, the *vice-comes* (Deputy of the earl), is found in Roman law. Alfred the Great (849-901) divided Britain into "shires," and at the head of each he placed an earl with a deputy known as a "reeve," a Saxon term meaning "keeper." Not unexpectedly, the "shire reeve" became a "sheriff." Note, U. of Balto. L. Rev. 282 (1973); 1 W. Blackstone, *Commentaries on the Laws of England.* * 339.

ordering him to remain on duty.[2] A further criticism was directed at an intraoffice procedure whereby when an employee requested a day off, no response was deemed to be approval. Needless to say, if the supervisor, for whatever reason, did not receive the request, the employee would, nevertheless, believe the supervisor's silence was approval. The opportunity of the employee's thus being misled to his peril is obvious.

Frustrated by the Secretary's ruling, a ruling it is to be noted that was brought about by the Sheriff's filing of charges with the Secretary, the Sheriff appealed to the Baltimore City Court. Subsequently, the Sheriff's tactics were substantially altered. While the original petition, Md. Rule B 2 e, attacked the Secretary's jurisdiction under the Maryland Constitution, Article IV, Section 44 [3] and Md. Courts and Judicial Proceedings Code Ann. § 2-309 (d) [4] an

---

2. How one is suspended and yet remains on duty is not explained in this record.

3. That section of the Constitution provides:

"There shall be elected in each county and in Baltimore City in the year 1946 and in every fourth year thereafter, one person, resident in said county, or City, above the age of twenty-five years and at least five years preceding his election, a citizen of the State, to the office of Sheriff. He shall hold office for four years, and until his successor is duly elected and qualified; shall give such bond, exercise such powers and perform such duties as now are or may hereafter be fixed by law.

In case of vacancy by death, resignation, refusal to serve, or neglect to qualify, or give bond, or by disqualification or removal from the County or City, the Governor shall appoint a person to be Sheriff for the remainder of the official term.

The Sheriff in each county and in Baltimore City shall receive such salary or compensation and such expenses necessary to the conduct of his office as may be fixed by law. All fees collected by the Sheriff shall be accounted for and paid to the Treasury of the several counties and of Baltimore City, respectively."

4. Courts art. § 2-309(d) provides:

"(1) In Baltimore City, the Sheriff shall receive a salary of $25,000. He shall appoint an undersheriff and chief deputy sheriff, three supervisory deputy sheriffs, one deputy sheriff writ clerk and four assistant deputy sheriff writ clerks, one stenographer and docket clerk, two clerks and he may appoint a total of 61 deputy sheriffs. Salaries for these employees shall be set by the Secretary of Personnel. A deputy sheriff who uses his personal automobile is entitled to a monthly automobile allowance at the same rate paid to other State employees. Any sheriff who is assigned a city-owned automobile may not receive the monthly automobile expense allowance. They shall also have assistants at the compensation

amended petition raised the additional ground that the Secretary lacked jurisdiction over the matter because of the Law Enforcement Officers' Bill of Rights, (LEOBR). Md. Ann. Code art. 27, §§ 727-734 (D).

The Sheriff was again rebuffed when the Baltimore City Court (SODARO, J.) granted Abshire's motion for summary judgment. The court held that "deputy sheriffs in Baltimore City are included in the State Merit System and that disciplinary actions are not controlled by the provisions of the Law Enforcement Officers' Bill of Rights."

The Sheriff continues in his unrelenting effort to fire Abshire by bringing an appeal to this Court where he challenges the Secretary's jurisdiction over deputy sheriffs in Baltimore City and the award of back pay to Abshire. Interlaced with the latter contention is the much berated but still very viable doctrine of sovereign immunity.

The funds to pay Abshire were available had he continued employment. Inasmuch as he was suspended, not fired, those same funds are still included within the Sheriff's budget. Consequently, unlike *Frosburg v. State Department of Personnel,* 37 Md. App. 18, 375 A.2d 582 (1977), the Sheriff had the wherewithal to pay the accrued salary. The remaining contentions that the appellant raises to sustain his position that the back pay award was contrary to law were not decided by the trial judge, and we do not reach them. Md. Rule 1085.

It is ironic that the Sheriff, who initially invoked the jurisdiction of the Secretary of Personnel now asserts that the Secretary did not possess the authority to hear the matter irrespective of Md. Ann. Code art. 64A, § 9E. That section, enacted as Laws 1971, ch. 519 declares:

"Notwithstanding any provisions in § 3 of this article or elsewhere, all employees of the Sheriff's

provided for in the annual ordinance of estimates of Baltimore City. Provision shall also be made in the ordinance for the expenses of the office of the Sheriff, including the purchase and maintenance of motor vehicles. The Mayor and City Council has the same power with respect to the salaries of the office of the Sheriff as it has under the city charter with respect to the salaries of all municipal departments. Employees of the Sheriff's office, except the Sheriff, shall be selected according to the provisions of § 9E of Article 64A of the Code."

office in Baltimore City, excepting the Sheriff, are part of the classified service. Any employee of the Sheriff's office who has been employed for at least six months on July 1, 1971, shall be a member of the classified service of the State as provided in this article, without further examination or qualification."

If section 9E is controlling, then the City court's action in affirming the decision of the Secretary is absolutely correct.

The obvious question then is what is the effect of the LEOBR on the instant case, and most particularly, on the Merit System Law, Md. Ann. Code art. 64A? The answer to the inquiry must be found by an analysis of the LEOBR considered in juxtaposition with the Merit System Law.

When originally enacted as Laws 1974, ch. 722, the LEOBR added eight new sections to Md. Ann. Code art. 27, namely, sections 727 through 734. Section 727 (b) defined a "law enforcement officer" as:

"any person who, in his official capacity, is authorized by law to make arrests and who is a member of one of the following law enforcement agencies:

(1) The Maryland State Police; or
(2) The Baltimore City police department; or
(3) The police department, bureau, or force of any county; or
(4) The police department, bureau, or force of any incorporated city or town; or
(5) *The office of the Sheriff of any county;* or
(6) The police department, bureau, or force of any bicounty agency or the University of Maryland." [5] (Emphasis supplied.)

---

5. By subsequent amendments additional agencies authorized to make arrests were placed under the umbrella of LEOBR. They are:

"(7) The State Aviation Administration police force of the Department of Transportation, the Mass Transit Administration police force of the Department of Transportation, the Maryland toll facilities police force of the

Significantly absent, by specific reference thereto, from the list of law enforcement agencies included within the ambit is the office of the Sheriff of Baltimore City. The Sheriff, however, argues that Md. Ann. Code art. 1, § 14, places his office under the LEOBR. Art. 1, § 14 provides: "The word county shall be construed to include the City of Baltimore, unless such construction would be unreasonable." The appellee asserts that construing the word county, as used in the LEOBR, to include Baltimore City would be unreasonable. Appellee points to the specific reference to the Baltimore City Police Department in Md. Ann. Code art. 27, § 727(b) (2) as a clear indication that the Legislature did not mean for the office of Sheriff of Baltimore City to be within the protection of the LEOBR. Appellee says that otherwise there was no need, rhyme or reason for the General Assembly to have made the specific reference to the Baltimore City Police inasmuch as they would have been included within section 727 (b) (3) or (4), unless the law makers intended to differentiate between Baltimore City and the counties. Thus, appellee contends, for the courts to interpret "county" to mean "City of Baltimore" would, in the circumstances, be unreasonable.

To bolster his argument, appellee refers to an unpublished opinion of the Attorney General dated May 24, 1978, addressed to a member of the House of Delegates. In that opinion the Attorney General observed that "[n]owhere in this section [Md. Ann. Code art. 27, § 727] is the Office of the Sheriff of Baltimore City mentioned." The opinion goes on to state:

"At the time the Law Enforcement Officers' Bill of Rights was enacted in 1974 and amended in 1975,

---

Maryland Transportation Authority, and the Maryland Port Administration police force of the Department of Transportation; or

(8) The police officers of the Department of Natural Resources; or

(9) The Maryland Alcohol and Tobacco Tax Enforcement Unit." Md. Ann. Code art. 27, § 727 (b) (7) through (9).

*See* Laws 1975, ch. 809, § 1; Laws 1976, ch. 482, § 1, ch. 484, § 1, ch. 504, § 1; Laws 1977, ch. 366, § 1.

the Office of Sheriff of Baltimore City had very little general law enforcement function.

The deputies were primarily process servers and, unlike any other sheriff's office in this State, were expressly included within the comprehensive State Merit System Law."

The opinion notes that Md. Ann. Code art. 64A, § 9E places all Baltimore City deputy sheriffs in the "classified system."

The then Attorney General changed his point of view as to whether the office of Sheriff of Baltimore City is embraced within the LEOBR.[6] The State here endeavors to erode the effect of the unpublished opinion by characterizing it as a "one-signature opinion," "drafted when the status of deputy sheriffs in Baltimore City were in a state of extreme flux," of little influence inasmuch as it was unpublished, "the reasoning . . . will not withstand scrutiny and . . . it conflicts with the conclusion of an earlier published opinion. 61 *Opinions of the Attorney General* 668, 670 (1976)."

We observe no conflict between 61 *Opinions of the Attorney General* 668 and the unpublished opinion of 1978. The published opinion deals solely with whether the Police Training Commission was required to provide the law enforcement training mandated by Md. Ann. Code art. 41, § 70A to deputy sheriffs of Baltimore City. The answer supplied in the opinion was that it depends upon the duties assigned to the deputy. Moreover, section 70A (a) (4) and (5) remove any doubt as to its application to deputies in Baltimore City provided the duty of the deputy is to enforce "the general criminal laws of this State." Article 41, § 70A (a) (4) defines a "law enforcement unit" to mean "any . . . sheriff's department . . . of the State, county or municipality. . . ." Article 41, § 70A (a) (5) declares that a "Municipality" is "any incorporated city of any class. . . ."

---

6. We are not to be understood as being critical of the Attorney General's altering of his position. There is clear precedent for such action. *See* Murphy v. Yates, 276 Md. 475, 348 A.2d 837 (1975) *vis à vis* 60 *Opinions of the Attorney General* 127 (1975).

We believe the Sheriff's reliance on 61 *Opinion of the Attorney General* 668 to be misplaced. If the opinion is of any value as support for either party in the instant case, it is the appellee who benefits. A clear inference may be drawn from the manner in which subsections (4) and (5) of section 70A (a) are written that the Legislature was fully cognizant of the provision it had enacted with respect to the LEOBR, and desired to make known that with respect to "law enforcement training" it wanted to include the deputies of the office of the Sheriff of Baltimore City insofar as those deputies enforce "the general criminal laws."

The deputy sheriffs of Baltimore City are in the unique position of being the only deputies in the State who are under the State Merit System Law. Md. Ann. Code art. 64A, § 9E. When that factor is considered and weighed along with the wording of the LEOBR referring to the Baltimore City Police Department and making reference to the office of Sheriff, we are led to the conclusion that to read Md. Ann. Code art. 27, § 727 (b) (5) to include the Sheriff of Baltimore City would be unreasonable. Moreover, such a construction would indicate that the specific reference in section 727 (b) (2) is a redundancy.

We note that during the 1976 session of the Legislature, House Bill No. 1526 was introduced "[f]or the purpose of including within the definition of law-enforcement officer, certain sheriffs' offices in the Law-Enforcement Officers' Bill of Rights." The amendment would have changed section 727 (b) (5) to read: "The office of the Sheriff of BALTIMORE CITY OR any county. . . ."

A similar bill, House Bill 738, was filed during the 1979 session. It was more specific as to its purpose and flatly said that it was to include "the sheriff's office of Baltimore City in the definition of law enforcement officer for purposes of the . . . [LEOBR]." That amendment sought to add the words "or Baltimore City" immediately after the noun "county" as it appears in section 727 (b) (5). Neither amendment was enacted.

We said in *Prince George's County v. State of Maryland Commission on Human Relations,* 40 Md. App. 473, 489, 392

A.2d 105, 115 (1978), *vacated on other grounds,* 285 Md. 205, 401 A.2d 661 (1979): "Although the Court of Appeals has 'never held that the amendment-rejection theory is a completely determinative method of ascertaining legislative intent, . . . [it] has indicated that such action strengthens the conclusion that the Legislature did not intend to achieve the results the amendment would have achieved if adopted.'" *Demory Brothers v. Board of Public Works,* 273 Md. 320, 326, 329 A.2d 674, *aff'g* 20 Md. App. 467, 473, 316 A.2d 529 (1974). *See also Bosley v. Dorsey,* 191 Md. 229, 240, 60 A.2d 691, 696 (1948). We opined in *Demory,* 20 Md. App. at 473, that "[i]t has been held that a legislative body's rejection of a statutory amendment is significant because it throws light upon the legislative intent." (Citations omitted.)

One may infer from the rejection of the House Bill No. 1526 in 1976 and House Bill No. 738 in 1979 an intent on the part of the Legislature not to include the office of Sheriff of Baltimore City within the ambit of the LEOBR. When that inference is considered together with what we think to be the carefully chosen language of Laws 1974, ch. 722, Laws 1975, ch. 809, Laws 1976, ch. 482, ch. 484, ch. 504, Laws 1977, ch. 366, we are led to the conclusion that the General Assembly, having placed the deputy sheriffs of Baltimore City within the State Merit Law, Article 64A, § 9E, purposely omitted that office from the protection afforded by LEOBR.

To hold, as the Sheriff urges us, that the office of Sheriff of Baltimore City [7] is within the sphere of the LEOBR would be an unreasonable interpretation, Md. Ann. Code art. 1, § 14, and a judicial trespass upon a legislative prerogative.

Judge Sodaro, in granting the appellee's motion for summary judgment, properly construed the law.

*Judgment affirmed.*
*Costs to be paid by appellant.*

---

[7]. Whatever may have been the power and grandeur of the office of sheriff, it has eroded with the passage of time so that, in the words of the Court of Appeals, the office is, "under our Constitution, . . . ministerial in nature; a sheriff's function and province is to execute duties prescribed by law." Crosse v. Board of Elections, 243 Md. 555, 561, 221 A.2d 431 (1966). In Baltimore City, for the most part, that means process serving.