# IN RE: A SPECIAL INVESTIGATION NO. 202

[No. 378, September Term, 1982.]

*Decided November 9, 1982.*

The cause was argued before LISS, ADKINS and ALPERT, JJ.

*Stephen M. Schenning, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, John-Claude Charbonneau, Assistant Attorney General,* and *Stefan D. Cassella, Assistant Attorney General,* on the brief, for appellant.

*Ira C. Cooke* and *M. Albert Figinski,* with whom was *David R. Sonneberg* on the brief, for appellees.

LISS, J., delivered the opinion of the Court.

Pursuant to letters from the Governor of Maryland to the Attorney General dated November 21, 1979, July 7, 1981, and February 9, 1982, the Medicaid Fraud Control Unit of the Office of the Attorney General has been conducting an investigation of a hospital and a nursing home located in Prince George's County, both of which are recipients of funds from the State Medical Assistance Program (Medicaid). In the course of the investigation, the Attorney General determined that a land holding joint venture is the lessor of the physical premises to the hospital. It has further been determined that the same joint venture is responsible for large scale construction projects for the hospital. In addition, it was discovered that the persons who own virtually all of the stock of the hospital are the partners in the subject joint venture.

One of the appellees herein is a certified public accountant (hereafter "Accountant") who has performed certain accounting services for the joint venture. On October 26, 1981, the Grand Jury for Baltimore City issued a subpoena duces tecum directed to the Accountant to produce "all records, including accountant's workpapers, financial reports, tax returns and any other documents pertaining to [the subject joint venture] for the years 1975 through 1980." The subpoena directed the production of these records before November 6, 1981.

On November 6, 1981, a motion to quash the subpoena was filed by appellees A and B, who are the principal owners of the hospital and the nursing home, as well as the joint venture, and by the Accountant. As grounds for this motion to quash, appellees alleged that: 1) the subpoena was beyond the scope of the authority granted to the Attorney General by the Governor; 2) the subpoena was in violation of the accountant/client privilege established by Maryland Code (1974, 1980 Repl. Vol.) of the Courts and Judicial Proceedings Article; and 3) that the materials sought by the subpoena were sought for an improper purpose. At a hearing before the Criminal Court of Baltimore on January 14, 1982, appellees advanced issues (1) and (2) in oral argument but

asked the court to consider issue (3) only in terms of certain "prophylactic" remedies which might be required should the court reject the other grounds and deny the motion to quash. Also, in a letter delivered to the court on the day before the hearing and in oral argument, appellees raised an additional issue; *i.e.,* whether the subpoena duces tecum was still enforceable once the term of the Grand Jury which issued the subpoena had expired.

In response to the motion to quash, the State filed a memorandum of points and authorities arguing that appellees A and B lacked standing to challenge the subpoena because the accountant/client privilege does not apply to a criminal investigation and that the subpoena was within the authority of the Attorney General. The State also specifically denied that the records sought by the subpoena were being sought for any purpose other than a bona fide criminal investigation being conducted by the Attorney General in conjunction with the Grand Jury for Baltimore City. Later the State filed a supplemental pleading responding to appellees' argument regarding the expiration of the Grand Jury.

A hearing on these issues was scheduled before the trial judge on January 6, 1982; it was continued to January 14, 1982 at the request of appellees' counsel. Since the term of the Grand Jury which issued the subpoena duces tecum was to expire on January 8, 1982, the trial judge issued an order on January 6, 1982, directing that all documentary and testimonial evidence obtained by that Grand Jury be impounded in the Office of the Attorney General for its presentation to the succeeding Grand Jury and further directing that the Attorney General accept delivery of all documents produced in compliance with any subpoena duces tecum issued by the Grand Jury but which had not been produced before the Grand Jury on or before the expiration of its term because the responding party either requested an extension of time or because a motion to quash such a subpoena duces tecum was in litigation at the time the term of the Grand Jury expired.

After the hearing on January 14, 1982, the trial judge held this case under advisement until April 23, 1982, when he

entered an order granting the motion to quash the Grand Jury subpoena duces tecum. The order reads as follows:

> After hearing extensive arguments of counsel and upon a thorough review of the entire court file, including, particularly, the several memoranda of law filed by counsel, it is the 23rd day of April, 1982, hereby ADJUDGED and ORDERED, that the Motion to Quash Grand Jury Subpoena Duces Tecum is GRANTED.
>
> AND IT IS FURTHER ORDERED, that if the Attorney General shows a reasonable basis supported by affidavit that the services of the accountant in question were sought or obtained as an aid in the planning or actual commission of something that the client knew or should have known was a crime or a fraud, then the herein Order is subject to further Order of this court.

The instant appeal followed. The State raises four issues to be determined by this appeal:

1. Did the lower court err in holding that the statutory accountant/client privilege was applicable in a criminal investigation unless the Attorney General shows a reasonable basis supported by affidavit that the services of the accountant in question were sought or obtained as an aid in the planning or actual commission of something that the client knew or should have known was a crime or a fraud?

2. Do appellees A and B have standing as members of the subject joint venture to contest the Constitutional and/or legal sufficiency of the subpoena duces tecum directed to their accountant?

3. Is the subpoena duces tecum in question within the authority of the Office of the Attorney General and the Grand Jury for Baltimore City?

4. Where a Grand Jury subpoena duces tecum is the subject of a pending motion to quash when the Grand Jury's term expires, and a court has ordered that all documents subpoenaed by this Grand Jury but not received by the

Grand Jury at the time its term expires shall be turned over to a successor Grand Jury, may a witness be compelled to honor the subpoena before the successor Grand Jury?

The appellees suggest that an additional issue was raised at the trial level but concede that the trial court did not rule on it because of the ruling granting the motion to quash the subpoena duces tecum. That issue reads as follows:

5. Whether, under Article V, Section 3 (a) (2) of the Maryland Constitution, the Governor may confer power to the Attorney General such as has been sought to be given in this matter?

1.

We have determined that the issue of primary importance in this case is the effect of the accountant/client privilege on the subpoena duces tecum issued by the Grand Jury requesting certain documents from the appellee Accountant.

Historically, no such testimonial privilege affecting communications between an accountant and his client was recognized under the common law. During the seventeenth and eighteenth centuries, when the common law first recognized most of the present-day privileges now existing under law, the activities of the accounting profession were very limited. Despite such a lack of foundation for this privilege in the common law, to date at least sixteen states and the Commonwealth of Puerto Rico have enacted accountant/client privilege statutes. *See Privileged Communications — Accountants and Accounting,* 66 Mich. L. Rev. 1264 (1968). It was held by the United States Supreme Court that federal law recognizes no confidential accountant/client privilege. *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).[1]

---

1. The federal policy against the accountant/client privilege is no longer absolute. The Second Circuit, in *United States v. Arthur Young & Company,* 677 F.2d 211 (2d Cir. 1982), created an accountant/client privilege for tax accrual files. We note, however, that Arthur Young is distinguishable from United States v. Couch, *supra,* in that the latter involved a criminal investigation whereas the former did not. For a critical analysis of the Arthur Young opinion, *see* Robinson and Stoltenberg, *Privilege and Accountants' Workpapers,* 68 American Bar Association Law Journal 1248-50 (October, 1982).

Maryland is one of the states which has adopted an accountant/client privilege statute. The privilege was first enacted in 1924 as Maryland Code, Article 75A, § 11, entitled "Public Accountants." Chapter 585, Acts of 1924, declared the purpose of the statute "to better establish and regulate the practice of public accounting as a profession." In 1961, Article 75A was repealed and re-enacted with virtually no change in the privilege section except its renumbering as § 20. In 1970, the pertinent section was renumbered as § 21. Chapter 2 of the 1st Special Session of 1973 repealed Article 75A, § 21 and recodified it in new language as Maryland Code (1974, 1980 Repl. Vol.) § 9-110 (a) and (b) of the Courts and Judicial Proceedings Article. Those sections now provide as follows:

(a) *Privilege.* — A certified public accountant, public accountant, or any person employed by him may not disclose the contents of any communication made to him by a person employing him to examine, audit, or report on any book, record, account, or statement nor may he disclose any information derived from the person or material in rendering professional service unless the person employing him or his personal representative or his successor in interest permits it expressly.

(b) *Exception.* — This privilege does not affect the criminal laws of the State or the bankruptcy laws.

The appellees point out in their brief that while this case was pending below the Attorney General by letter dated December 15, 1981 sought the introduction of what they perceived to be a clarifying change to § 9-110 (b) of the Courts Article. They requested a member of the Legislature to introduce a bill which would have changed the language of the section to read as suggested in the letter as follows:

As we discussed, although there is no accountant/client privilege recognized in the common law, § 9-110 (a) provides for such a privilege. However, § 9-110 (b) provides an exception;

*i.e.,* "[t]his privilege does not *affect* the criminal laws of the State or the bankruptcy laws" (emphasis added). While the only logical interpretation of this language is that the statutory accountant/client privilege does not *apply* to the criminal laws of the State or the bankruptcy laws, the present language has resulted in repetitive litigation on this point. In each instance of which I am personally aware, the *nisi prius* Courts have agreed with this interpretation. It is submitted that this is the only conclusion that logic can provide, and certainly appears to be indicative of the true legislative intent.

Accordingly, for the purposes of clarification it is suggested that a bill be introduced in the 1982 Legislative Session changing § 9-110 (b) to read as follows:

"This privilege ~~does not affect~~ SHALL NOT APPLY TO ANY PROCEEDINGS INVOLVING the criminal laws of the State or the bankruptcy laws."

The bill was introduced on February 11, 1982 as House Bill 1186, 1982 session of the Maryland General Assembly, and referred to the Judiciary Committee. It received an unfavorable report on March 16, 1982. The appendix does not reveal the final disposition of the proposed bill.

Appellees urge that the failure of the General Assembly to adopt the proposed amendment is an indication of the legislative will. In support of their position they cite *Donmar Maryland Corporation v. Hawkesworth,* 46 Md. App. 575, 420 A.2d 295 (1980); *Sheriff of Baltimore City v. Abshire,* 44 Md. App. 256, 408 A.2d 398 (1979).

The adoption in absolute terms of a privilege creating an exception to the general rule of testimonial compulsion represents the enunciation of a strong public policy in favor of accountant/client confidential communications. To require the disclosure of the communications would be violative of that public policy. *See Hare v. Family Publications Service, Inc.,* 334 F. Supp. 953 (D. Md. 1971). In spite of this strongly enunciated public policy in favor of the confidentiality of

accountant/client communications, however, we are left with the narrow question of the effect of the exceptions to the privilege set out in subsection b of § 9-110 of the Courts Article.

As we have previously noted, the accountant/client privilege did not exist at common law. It is an elementary rule of statutory construction that statutes in derogation of the common law are to be strictly construed. *MacBride v. Gulbro*, 247 Md. 727, 234 A.2d 586 (1967); *Gleaton v. State*, 235 Md. 271, 201 A.2d 353 (1964); *Maryland and Pennsylvania R. Co. v. Silver*, 110 Md. 510, 73 A. 297 (1909). Therefore, the Legislature, in granting the accountant/client privilege in derogation of the common law, made it clear that the privilege should not be construed as modifying, changing or affecting the criminal or bankruptcy laws of this State. While the language was simplified by the recodification of Article 75A into § 9-110 (a) and (b) of the Courts Article, there is nothing in the new language to indicate that the Legislature intended to grant an absolute privilege. It seems clear to us that the accountant/client privilege, as enacted, was intended to protect the expectation of privacy of individuals in matters involving contracts, domestic disputes, and other civil and equity controversies; but that it did not seek to create an expectation of privacy involving possible violations of the criminal or bankruptcy laws of the State. We do not agree that the Legislature intended to create an absolute privilege for accountants with the sole exception that the privilege could not be invoked to prevent testimony or evidence about the counseling of the commission of a crime.

Appellees argue that accountant/client confidentiality is essential to the full maintenance of the relation between the parties because a client must be free to discuss highly confidential and often complex financial details with his accountant. This argument has a surface plausibility. However, when examined in light of the other privileges, *e.g.,* the lawyer/client privilege, the doctor/patient privilege, and the priest/penitent privilege, it is obvious that the latter are absolute privileges while the accountant/client privilege is

made subject to statute to the exceptions stated in subsection 9-110 (b) of the Courts Article.

The trial court, we conclude, erred when it granted the appellees' motion to quash the subpoena in this case. Nor was the error cured when it ruled that it would reconsider its order quashing the subpoena if the State could show "a reasonable basis supported by affidavit that the services of the accountant in question were sought or obtained as an aid in the planning or actual commission of something that the client knew or should have known was a crime or a fraud." It seems clear to us that this ruling was an unwarranted interference with the Grand Jury's right and duty to investigate possible violations of the criminal statutes. The State and the Grand Jury were engaged in an investigation which might or might not lead to the institution of criminal charges. Section 9-110 (b) of the Courts Article, does not permit the statutory privilege to prevent the State from subpoenaing accountants' records for use in the trial of such criminal charge. If this is correct, then the logical conclusion is that the same interpretation of the meaning of the statute must prevail when the Grand Jury seeks to obtain the same records to assist it in determining whether a crime has been committed and charges should be brought. Any attempt to require the State to show probable cause as proposed by the trial court's ruling is, we believe, an unreasonable and illegal attempt to set limits to the investigation the Grand Jury may conduct. *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

2.

The State contends in its brief that several of the appellees had no standing to raise the issue of the accountant/client privilege. At the hearing below, however, the State conceded that the Accountant was one of the parties to the case below and on appeal did have standing to move to quash the subpoena duces tecum. Under these circumstances, we perceive the issue of standing to be a nonissue in this case.

### 3.

The appellees raised the issue whether the subpoena duces tecum was within the authority of the office of the Attorney General and the Grand Jury of Baltimore City. Both the appellant and appellee have briefed and argued the issue but no evidentiary hearing on the issue was ever held, nor was there any ruling by the trial court below. We are asked by the State to consider the issue under our discretionary powers authorized by Maryland Rule 1085, but we decline to do so, in the light of our conclusions that there are a number of issues raised but not decided below which require our remand of this case to the trial court for further proceedings.

### 4.

This is another issue raised and not decided by the trial court. The controversy concerns whether it was within the supervisory authority of the Criminal Court of Baltimore to order that the Attorney General accept delivery of all documents produced in compliance with a subpoena duces tecum issued by the Grand Jury during its term but not produced before them prior to the expiration of its term. It is clear from the briefs that the trial judge issued some sort of "after life" order in an effort to extend the life of the Grand Jury but the order is not in the record and is therefore not before us. No consideration or decision on the issue was ever rendered by the trial judge, therefore the issue is not before us.[2]

### 5.

Appellees challenge the subpoena in part because "a subpoena directed at obtaining records of the landlords of a hospital is beyond the scope of authority granted to the Attorney General by the Governor." The parties have argued that the determination of this issue involves a sub-

---

**2.** This identical issue was raised in this Court in Number 327, September Term, 1982. The Court of Appeals, on its own motion, issued a writ of certiorari and the case is now designated as Number 83, September Term, 1982, and is scheduled to be heard in that Court by early December, 1982.

stantial constitutional issue. Again, the issue was not decided below and is therefore not properly before this Court. The same issue has been raised and extensively argued in Court of Special Appeals Number 704, September Term, 1982, scheduled for a hearing on November 10, 1982.[3] We defer determination of this issue until Number 704 has been decided by this Court.

*Order quashing the subpoena duces tecum vacated; case remanded for further proceedings.*
*Costs to be paid by appellees.*

---

3. Writ of Certiorari was granted by the Court of Appeals of Maryland on October 29, 1982 and is now designated as No. 117, September Term, 1982.