Dear Senator Colburn:
You have requested our opinion whether an audit firm's "management letter" is privileged and therefore exempt from the Public Information Act from disclosure to members of the public. You also asked whether, if an audit firm's management letter is privileged, it is nevertheless available to a governmental agency that is the source of funding for the recipient of the management letter.
Our opinion is as follows:
1. A management letter is privileged and exempt from disclosure from the Public Information Act only to the extent that it contains either (i) a communication made by a client to the licensed certified public accountant or firm performing the audit or (ii) information derived from the client's materials. The portions of a management letter that contain comments of the auditor severable from client communications or client-derived information are not privileged.
2. Because the Public Information Act applies to interagency requests for access to records, the agency recipient of a management letter that is partly privileged may decline to disclose those parts of the letter to another government agency, even one that provides its funding, unless other law requires disclosure.
 I Background
Earlier this year, the Commissioners of Caroline County received a request from two newspapers for a copy of a "management letter" that had been sent by an audit firm to the County. The audit firm recommended that the Commissioners decline to make the letter public.
The audit firm distinguished between the nature and purpose of a management letter and an audit report. The former "is a letter that points out minor problems, identifies potential problems and praises a job well done when appropriate." Letter from John D. Ireland, CPA, to County Commissioners of Caroline County (February 9, 1996). According to Mr. Ireland, the management letter (which we ourselves have not seen) contains "little or no background information" and only very brief comments. This is so, Mr. Ireland points out, because the letter is both preceded and followed by oral discussions. The audit firm is concerned that the letter itself, without the context of these discussions, might be misleading.
Mr. Ireland observes that the audit report, which is made public, "would include any material problems in the County's operations. Our firm's job is to make judgments about how important or material an issue is and our tool of communication to the public is the audit report, not a management letter."
 II Statutory Privilege
No privilege for communications between an accountant and a client was recognized under the common law. In re SpecialInvestigation No. 202, 53 Md. App. 96, 100, 452 A.2d 458 (1982).See generally Francis M. Dougherty, Annotation, PrivilegedCommunication Between Account and Client, 33 A.L.R. 4th 539 (1984).
In 1924, the General Assembly modified the common law by enacting a statutory privilege. Chapter 585 of the Laws of Maryland 1924. The current version of the privilege is set out in § 9-110 of the Courts and Judicial Proceedings ("CJ") Article, Maryland Code:
 Except [with regard to disclosures in a peer review process or in connection with a bankruptcy, criminal, or Board of Public Accountancy regulatory proceeding], or unless expressly permitted by a client or the personal representative or successor in interest of the client, a licensed certified public accountant or firm may not disclose:
 (1) The contents of any communication made to the licensed certified public accountant or firm by a client who employs the licensed certified public accountant or firm to audit, examine, or report on any account, book, record, or statement of the client;
 (2) Any information that the licensed certified public accountant or firm, in rendering professional service, derives from:
 (i) A client who employs the licensed certified public accountant or firm; or
(ii) The material of the client.
CJ § 9-110(b). The purpose of the statutory privilege was "to create an atmosphere in which the client can feel free to discuss highly confidential and personal financial details with his accountant." Dixon v. Bennett, 72 Md. App. 620, 642,531 A.2d 1318 (1987), cert. denied, 311 Md. 557 (1988).
Because "the accountant/client privilege did not exist at common law," the statutory privilege "in derogation of the common law [is] to be strictly construed." In re Special InvestigationNo. 202, 53 Md. App. at 103. Construed strictly — or, indeed, merely straightforwardly, in accordance with its text — CJ § 9-110
by no means provides blanket protection to communications from an accountant to his or her client. Rather, such a communication is privileged if, but only if, it contains information that is itself a client communication or is derived from the client's material.
In an unpublished opinion issued in 1979, Attorney General Sachs concluded that CJ § 9-110 did not apply to a "managerial audit letter" that indicated weaknesses in a school board's internal accounting controls and recommended ways to improve the control system. Opinion No. 79-024 (1979) (unpublished). Attorney General Sachs observed that the statutory privilege "was enacted to prohibit accountants from disclosing information given to them by their clients. It is not intended to prevent clients (such as the Board) from disclosing advice (such as the managerial audit letter) given to them by their accountants." Opinion No. 79-024, at 6-7 n. 7. We are aware of no change in the law since 1979 that would call into question this analysis and conclusion.
The Maryland Public Information Act calls for a custodian to deny inspection of a public record if "by law, the public record is privileged or confidential." § 10-615(1) of the State Government Article. To the extent that portions of a management letter from a CPA fit within the relatively narrow confines of the statutory privilege in CJ § 9-110, the custodian must deny inspection. However, to the extent that a letter contains comments from a CPA that are severable from any client communications or material, those portions must be disclosed.
We note, in this regard, that the management letter to the Commissioners of Caroline County is said to contain "little or no background information . . . ." Not having seen the letter, we can reach no conclusion whether such a letter could be privileged. In any event, the responsibility for applying these legal standards to the particular document is the Commissioners'.
 III Funding Agency Access to Privileged Portions of a Letter
As discussed in Part II above, portions of a management letter might fall within the statutory privilege — that is, those portions that repeat client communications or are derived from client material. If so, other public agencies would generally not be entitled to inspect those portions of the management letter, because the Act "regulates the access of one governmental agency to the records of another." Office of the Attorney General,Public Information Act Manual 5 (6th ed. 1993).
Although the agency that receives the management letter may withhold it from another governmental agency on this basis, it need not do so. "[T]he accountant-client privilege belongs to the client . . ." and therefore can be waived by the client. FirstInterstate Credit Alliance, Inc. v. Arthur Andersen Co.,541 N.Y.S. 2d 433, 435 (N.Y.App.Div. 1989) (applying Maryland law). It is also possible that other law might require the disclosure of a document that is not subject to disclosure under the Public Information Act. In the 1979 opinion, Attorney General Sachs concluded that the "managerial audit letter" in question there, which had been prepared for a board of education, was "a matter of public record" under § 5-108(c)(1) of the Education Article. Opinion No. 79-024, at 3.
 IV Conclusion
In summary, it is our opinion that management letters from audit firms are generally not privileged against disclosure. To the extent that portions of a particular letter are privileged, access to those portions may be denied to other governmental agencies unless another law requires disclosure.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions and Advice
 *Page 169