*1286
 
 OPINION
 

 Per Curiam:
 

 On January 28, 1992, the district court confirmed an arbitration award in favor of Mark Brandell and Janet Brandell (the Brandells) for $435,066.82. United Productions, Inc. (UP) and Harry R. Jones (Jones) failed to pay this judgment. Accordingly, the district court issued a writ of execution, which remains unsatisfied. The district court also issued an order of examination pursuant to NRS 21.280,
 
 [1]
 
 requiring both UP and Jones to appear and answer concerning their property. Neither has ever appeared.
 

 In an attempt to execute the judgment, the Brandells subpoenaed Sharon J. McNair (McNair), who has worked as an accountant for both UP and Jones for fifteen years. Pursuant to NRS 21.310,
 
 [2]
 
 the district court ordered McNair to appear and testify
 
 *1287
 
 regarding UP’s and Jones’ assets. During her examination, McNair answered certain background questions, but refused to answer twenty-one other questions on the basis that the questions required the divulgence of information protected by the accountant-client privilege.
 
 [3]
 

 The district court noted that it thought that the questions were general in nature, and ordered McNair to answer them. McNair refused and was held in contempt, with the order stayed pending the outcome of this petition. For the following reasons, we deny McNair’s petition.
 

 McNair argues that the accountant-client privilege applies to the questions at issue and asserts that the district court exceeded its authority in issuing the contempt order. We disagree.
 

 An interpretation of the accountant-client privilege delineated in NRS 49.185 is an issue of first impression in Nevada.
 
 [4]
 
 Relying
 
 *1288
 
 on Ashokan v. State, Dep’t of Ins., 109 Nev. 662, 856 P.2d 244 (1993), McNair argues that the accountant-client privilege should be interpreted broadly by this court. In
 
 Ashokan,
 
 however, we noted:
 

 Privileges should be construed narrowly. United States v. Nixon, 418 U.S. 683, 710 (1974) (“Whatever their origins, these exceptions to the demand for every man’s evidence [i.e., privileges] are not lightly created nor expansively construed, for they are in derogation of the search for truth.”).
 

 Id.
 
 at 668, 856 P.2d at 247.
 

 Additionally, there is little policy support for concluding that the accountant-client privilege should be broadly construed. In Gearhart v. Etheridge, 208 S.E.2d 460 (1974), the Supreme Court of Georgia stated:
 

 The purpose of the accountant-client privilege is to insure an atmosphere wherein the client will transmit all relevant information to his accountant without fear of any future disclosure in subsequent litigation. Without an atmosphere of confidentiality the client might withhold facts he considers unfavorable to this situation thus rendering the accountant powerless to adequately perform the services he renders.
 

 Id.
 
 at 461. However, as one commentator has noted:
 

 Communications to accountants are privileged in perhaps a third of the states. This privilege is most closely analogous to that for attorney-client, though the social objective to be furthered is arguably a distinguishable and lesser one.
 

 1 Charles T. McCormick, McCormick on Evidence § 76.2, at 288 (4th ed. 1992) (footnotes omitted). Accordingly, we conclude that neither Nevada law nor general policy reasons support McNair’s argument that we should broadly construe the accountant-client privilege.
 

 Furthermore, we reject McNair’s argument that the questions
 
 *1289
 
 solicit “confidential communications.”
 
 [5]
 
 As the district court’s comment that the questions were “general in nature” implies, McNair failed to show how any type of “confidential communications” were implicated by the questions. Most of the questions asked of McNair sought answers requiring a simple yes or no response or general factual information. As such, the questions did not necessarily implicate any confidential communications that may have taken place between McNair, UP, and Jones.
 

 In Cheyenne Construction v. Hozz, 102 Nev. 308, 720 P.2d 1224 (1986), we held:
 

 [A]cts or services performed by an attorney for his client in the course of employment and which are accessible to others or to the public do not fall within the privilege because no private communication is involved.
 

 Id.
 
 at 312, 720 P.2d at 1226 (citing Arkansas Nat. Bank v. Cleburne County Bank, 525 S.W.2d 82, 84 (Ark. 1975)). McNair asserts that the preparation of financial statements, the nature and extent of accounting work, banking services, and the preparation of accounts receivable all involve acts and services that are not accessible to others. McNair also asserts that the identity of stockholders and sale of assets is information which would be obtained from privileged communications and therefore may not be disclosed. McNair, however, fails to cite any authority whatsoever for these assertions. As the burden is on McNair to establish that the requested information comes within the privilege, her failure to make any showing that the information was confidential and not accessible to the public leads us to reject her argument.
 
 See
 
 Liew v. Breen, 640 F.2d 1046, 1049 (9th Cir. 1981); Delaney v. Superior Court, 789 P.2d 934 (Cal. 1990). [Headnote 5]
 

 Lastly, we reject McNair’s argument that regardless of the accountant-client privilege, tax returns themselves are privileged, thus relieving her of any duty to answer questions regarding her work on UP’s and Jones’ tax returns. In support of this argument, McNair cites Clark v. District Court, 101 Nev. 58, 692 P.2d 512 (1985) and Schlatter v. District Court, 93 Nev. 189, 561 P.2d 1342 (1977). These cases rely upon Matchen v. McGahey, 455
 
 *1290
 
 P.2d 52 (Okla. 1969), wherein the Supreme Court of Oklahoma stated:
 

 We adopt the majority view, and hold that this evidentiary rule [relevancy] should be construed in concert with the prevalent discovery statutes. The court may allow the production of income tax records and their inspection in proper cases.
 

 Id.
 
 at 56. Accordingly,
 
 Clark
 
 and
 
 Schlatter
 
 do not hold that tax returns are privileged information, but instead conclude that tax returns must be relevant to be discoverable, and may not be discoverable in the absence of a showing that the information is otherwise unobtainable.
 
 Clark,
 
 101 Nev. at 64, 692 P.2d at 516;
 
 Schlatter,
 
 93 Nev. at 192, 561 P.2d at 1343.
 

 In the instant case, the district court issued a writ of execution on the unsatisfied judgment. Information contained in the tax returns may be relevant in identifying assets and collecting the judgment. It appears that information regarding UP’s and Jones’ assets may be otherwise unobtainable, as the Brandells have been unsuccessful thus far in their efforts to discover such information, despite the expenditure of much time and money. In contravention of the district court’s order, both UP and Jones have refused to appear and answer questions concerning their property. Additionally, UP has apparently discontinued operations in Nevada. Accordingly, the tax returns sought by the Brandells should be discoverable.
 

 Further, since both UP and Jones could be compelled pursuant to NRS 21.280 to produce documents regarding their property, McNair should be compelled to produce the relevant documents in her possession.
 
 [6]
 

 See
 
 Arkansas Nat. Bank v. Cleburne County Bank, 525 S.W.2d 82, 85 (Ark. 1975) (stating that an attorney may be required to produce papers belonging to her client where the knowledge of their existence is accessible to others or where the client might be compelled to produce them).
 

 Accordingly, we conclude that the district court did not exceed its authority in issuing an order holding McNair in contempt. McNair’s petition is denied.
 

 [1]
 

 NRS 21.280 provides, in relevant part:
 

 After the issuing of an execution against property, and upon proof by aflidavit of a party or otherwise, to the satisfaction of the court or of the judge thereof, that any judgment debtor has property which he unjustly refuses to apply toward the satisfaction of the judgment, such court or judge may by an order require the judgment debtor to appear at a specified time and place before such judge, or master appointed by him, to answer concerning the same; and such proceedings may thereupon be had for the application of the property of the judgment debtor toward the satisfaction of the judgment as are provided upon the return of an execution.
 

 [2]
 

 NRS 21.310 provides:
 

 Witnesses may be required to appear and testify before the judge or
 
 *1287
 
 master conducting any proceeding under this chapter in the same manner as upon the trial of an issue.
 

 [3]
 

 Those questions were:
 

 1. In the course of your duties as an accountant for [UP] did you prepare tax returns?
 

 2. What type of work did you do for [UP] from the mid 1980’s to the present?
 

 3. What type of accountant work did you do for [Jones] from 1980 to the present?
 

 4. Do you have any tax returns for [UP]?
 

 5. Have you prepared tax returns for [UP] from the mid 1980’s to the present?
 

 6. Do you have in your possession tax returns for [UP] from the mid 1980’s to the present?
 

 7. What is the most recent tax return you prepared for [UP]?
 

 8. What is the most recent tax return you have prepared for [Jones]?
 

 9. Do you handle the banking for [UP]?
 

 10. Do you handle the banking for [Jones]?
 

 11. What documents do you have in your possession regarding accounting records of [UP]?
 

 12. Have you ever prepared any accounts receivable for [UP]?
 

 13. Have you ever prepared any accounts receivable ledgers for [UP]?
 

 14. Have you ever prepared any accounts receivable ledgers for [Jones]?
 

 15. Do you have in your possession any documents reflecting the sale of any assets of [UP]?
 

 16. Within the last five years to your knowledge has [UP] sold any of its assets?
 

 17. Is [UP] still in existence to your knowledge?
 

 18. Is Jackie Do Los Reyes still a stockholder of [UP]?
 

 19. Who are the stockholders of [UP]?
 

 20. Have you ever prepared any financial statements for [UP]?
 

 21. Have you ever prepared any financial statements for [Jones]?
 

 [4]
 

 NRS 49.185 provides:
 

 
 *1288
 
 A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications:
 

 1. Between himself or his representative and his accountant or his accountant’s representative.
 

 2. Between his accountant and the accountant’s representative.
 

 3. Made for the purpose of facilitating the rendition of professional accounting services to the client, by him or his accountant to an accountant representing another in a matter of common interest.
 

 [5]
 

 NRS 49.155 defines a “confidential” communication as follows:
 

 A communication is “confidential” if it is not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional accounting services to the client or those reasonably necessary for the transmission of the communication.
 

 [6]
 

 Additionally, NRS 21.310 specifically allows a judgment creditor to require witnesses with knowledge of the judgment debtor’s property to appear and testify on the issue.