714 A.2d 188

**SEARS, ROEBUCK & CO.**

v.

**Paul GUSSIN et al.**

**No. 117, Sept. Term, 1997.**

Court of Appeals of Maryland.

July 31, 1998.

Richard J. Link (Curtis Karpel, Law Offices of Curtis J. Karpel, on brief), Silver Spring, for appellant.

J. Andrew Heaton, Asst. Gen. Counsel (Ernst & Young LLP, on brief), Washington, DC, for appellees.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RAKER, Judge.

Appellant Sears Roebuck & Co., seeks documents reflecting investments, gifts, asset transfers, trusts, income, and real property in the possession of Ernst & Young L.L.P., accountants for Appellee Paul Gussin. We shall hold that the client did not waive the accountant-client privilege found in Mary-

land Code (1974, 1995 Repl.Vol., 1997 Supp.), § 9–110 of the Courts & Judicial Proceedings Article[1] and, accordingly, shall affirm the judgment of the Circuit Court for Prince George's County.

### I.

Appellant Sears, Roebuck & Co., (hereinafter "Sears") obtained a judgment in the amount of $36,031.46 against Appellee, Paul Gussin, on August 7, 1995 in the Circuit Court for Prince George's County, Maryland. After judgment was entered in Maryland, the judgment was enrolled in Florida, where Mr. Gussin resides. Sears proceeded with discovery in aid of enforcement of that money judgment and Sears took Mr. Gussin's deposition in Florida on May 30, 1996.

At his deposition in Florida, Gussin produced his 1994 federal income tax return. The 1994 tax return, filed jointly with his wife, showed $247,787 in investment income. Gussin testified that the return was prepared by his accountant, Ernst & Young L.L.P. (hereinafter "Ernst & Young") of Baltimore, Maryland. Attached to the 1994 return was a printout showing the companies, partnerships, trusts, and bank accounts that make up the reported investment income. Gussin testified that Ernst & Young had in its possession the K–1 forms, showing the income for each individual investment item. Gussin stated that he had no bank accounts, that he did not own the home in which he and his wife resided, and that he did not know when the home was acquired. The 1994 tax return also showed $161,000 in "other gains and losses." Gussin denied ownership of any significant individual assets, despite the fact that in the mid–1980s he received $6.7 million for the sale of a business.

At the deposition, Sears's counsel questioned Gussin regarding his assets.

---

1. Unless otherwise indicated, all statutory references hereinafter are to Maryland Code (1974, 1995 Repl.Vol., 1997 Supp.), Courts & Judicial Proceedings Article.

Q: Now who has the papers that would reflect the actual ownership of these various investments?

A: Probably in—probably, I'm just trying to think, probably in the office.

Q: What office?

A: That my son has.

\* \* \* \* \* \*

Q: All right. Would Ernst & Young have the papers also?

A: I imagine. I don't know. They did the tax return. *You could ask them.*

(Emphasis added). Sears also deposed Mr. Gussin's wife, Jocelyn. Ms. Gussin testified that, "she was born into money," and that she was involved in a shoe store business with her husband. The shoe business was sold in the mid–1980's for $20 million, and, in return for his one-third interest in the business, Mr. Gussin received approximately $6 million. Ms. Gussin testified that she had no idea what investments Mr. Gussin owned or presently owns, and she had no idea what he did with the money he received from the sale of the shoe store. She testified that Ernst & Young had all the papers that were used to prepare the tax returns.

Thereafter, Sears served a subpoena on Ernst & Young in Maryland in order to discover the assets and general financial condition of Paul Gussin.[2] The subpoena directed Ernst &

---

**2.** The subpoena requested Ernst & Young to identify the individual(s) who prepared the tax returns, the individual(s) who have custody of Gussin's documents and any individuals who have personal knowledge of Gussin's financial condition, including, but not limited to, his assets and the sources of his income and investments. The subpoena commanded Ernst & Young to produce the following documents:

1. All documents reflecting the legal ownership of all corporations, partnerships, and other investment entities, as reflected in both the 1994 and 1995 federal 1040 income tax returns, in which Paul Gussin either then had an interest and/or now retains an interest (either individual or joint ownership interest).
2. All documentation reflecting investments of any nature owned by Paul Gussin either individually or jointly for as many years as you maintain such records.

Young to designate a representative to testify as to matters concerning Gussin and to produce documents, *inter alia,* relating to Gussin's ownership interest in the investments listed in his 1994 federal income tax return. Ernst & Young filed an objection to the subpoena, indicating that it would turn over the documents and comply with the subpoena so long as a court order was entered to that effect. Sears filed a written response to Ernst & Young's objection.

On July 11, 1997, Judge Thomas Smith held a hearing in the Circuit Court for Prince George's County. In response to Ernst & Young's objection to the subpoena, Sears made several arguments. First, Sears argued that Gussin waived the accountant-client privilege by his statement, "you can ask them," at his deposition. Second, Sears argued that Gussin made a fraudulent conveyance, in violation of Subtitle 2 of Title 15 of the Commercial Law Article of the Maryland Code (1975, 1990 Repl.Vol., 1997 Supp.), to his wife or some other individual, thereby precluding Gussin from relying on the privilege.

---

3. All documentation constituting or referring to tax returns filed by Paul Gussin for 1993 and before, either jointly or individually, for as many years as you maintain such records.

4. All documentation reflecting any gift tax returns filed by Paul Gussin, individually or jointly.

5. All documentation which would reflect any transfers of any assets by Paul Gussin to anyone from 1990 through the present, including, but not limited to, Frederick Gussin (Paul Gussin's son).

6. All documentation reflecting any trusts or other entities either set up by Paul Gussin or into which Paul Gussin transferred any assets since 1990.

7. All documentation reflecting any income Paul Gussin has received from employment, trade or profession, or from operation of a business, for as many years as you maintain such records.

8. All documentation reflecting any income received by Gussin other than from employment, trade, profession or operation of a business, for as many years as you maintain such records.

9. All documentation reflecting or referring to any real or personal property owned by Paul Gussin for as many years as you maintain such records.

10. All documentation relied upon by you in your preparation of income tax returns for Paul Gussin for as many years as you maintain such records.

The record reflects that the waiver and fraud arguments were the only two issues raised by Sears at the hearing before Judge Smith. Sears did not argue that the documents themselves were not privileged information. The circuit court sustained Ernst & Young's objection and quashed the subpoena in its entirety, finding that Gussin asserted the accountant-client privilege and that the privilege had not been waived. Sears filed a timely appeal to the Court of Special Appeals and we granted *certiorari* on our own motion prior to consideration by the intermediate appellate court.

## II.

Before this Court, Sears contends that the accountant-client privilege established in § 9–110 of the Courts & Judicial Proceedings Article should not apply in this case for several reasons: (1) Gussin expressly permitted Ernst & Young to disclose the information and/or Gussin waived the privilege by his conduct at his deposition; and (2) the discovery Sears seeks falls within the "fraud exception" to the privilege, recognized in *Dixon v. Bennett*, 72 Md.App. 620, 642, 531 A.2d 1318, 1329 (1987), *cert. denied*, 311 Md. 557, 536 A.2d 664 (1988). Sears initially contends that Gussin's statement, "you can ask [Ernst & Young]," operated as express permission for disclosure, thereby waiving the accountant-client privilege, because it gave Sears permission to deal with Ernst & Young regarding his investment income. Sears also argues that Gussin cannot rely on the accountant-client privilege because there is evidence that he was involved in fraud. Sears maintains that there is evidence "that Gussin may be committing fraud, or has committed a fraud, to avoid paying creditors." Sears's fraud argument is based on Mr. and Ms. Gussin's deposition testimony that, notwithstanding both Gussin's receipt of $6 million in the mid–1980s and the 1994 tax return reporting investment income of $247,787, Gussin nonetheless testified, "I don't have any money." Sears concedes in its brief that it does not, and, indeed, cannot allege that Ernst & Young participated in or furthered fraudulent activity, or was even aware of any fraudulent conduct. Sears simply argues that

they are entitled to discover the documents under the fraud exception because Ernst & Young has access to documents showing assets presently or previously owned by Gussin.

In response, Ernst & Young, on behalf of Gussin, argues that Gussin never waived the privilege or gave express permission for the documents to be released. Ernst & Young argues that Gussin's deposition statement, "you can ask them," was merely Gussin suggesting that Ernst & Young was more likely to know which documents were in its possession than Gussin. Furthermore, if Gussin's statement was an invitation to approach his accountant, Ernst & Young contends that this statement was merely an invitation to ask Ernst & Young about whether the accountant had *possession* of the documents pertaining to Gussin, not permission for Sears to discover the content of those documents. According to Ernst & Young, Gussin's deposition testimony was not a partial waiver of the privilege. Second, Ernst & Young argues that even if the accountant-client privilege could be waived in a manner other than by express permission, nothing in Gussin's testimony could be taken as an implied waiver of the privilege. Ernst & Young asserts that it is obvious that Gussin intended to keep his financial affairs confidential.

Finally, as to any purported "fraud exception" to the accountant-client privilege, Ernst & Young argues that the Court of Special Appeals erred in *Dixon* by recognizing a fraud exception to the accountant-client privilege. In addition, even if this Court were to adopt a fraud exception to the privilege, this case would not fall within that exception because Sears has not made the requisite *prima facie* showing of fraud.

### III.

The privilege against disclosure by a licensed, certified public accountant of the contents of any communication made by a client who employs the accountant to audit, examine, or report any account, book, record, or statement of the client, and any information derived from the client while rendering

professional services, is found in Courts & Judicial Proceedings Article § 9–110. The statute provides in pertinent part:

(b) *Privilege—In general.*—Except as provided in subsections (c) and (d) of this section or unless expressly permitted by a client or the personal representative or successor in interest of the client, a licensed certified public accountant or firm may not disclose:

(1) The contents of any communication made to the licensed certified public accountant or firm by a client who employs the licensed certified public accountant or firm to audit, examine, or report on any account, book, record, or statement of the client;

(2) Any information that the licensed certified public accountant or firm, in rendering professional service, derives from:

(i) A client who employs the licensed certified public accountant or firm; or

(ii) The material of the client.

\*         \*         \*         \*         \*         \*

(d) *Privilege—Exceptions.* —The privilege against disclosure required by subsection (b) of this section does not affect:

(1) The bankruptcy laws;

(2) The criminal laws of the State; or

(3) A regulatory proceeding by the State Board of Public Accountancy under §§ 2–317 and 2–412 of the Business Occupations and Professions Article.

■■■■ In construing a statute, the paramount objective is to ascertain and give effect to the intent of the Legislature. *Lewis v. State,* 348 Md. 648, 653, 705 A.2d 1128, 1130 (1998); *Harris v. State,* 344 Md. 497, 510, 687 A.2d 970, 976, *cert. denied sub nom. Koenig v. State,* U.S. , —— U.S. ——, 118 S.Ct. 605, 139 L.Ed.2d 492 (1997). "[I]f the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation and the specific purpose of the provision being interpreted, our inquiry

is at an end." *Philip Electronics v. Wright,* 348 Md. 209, 216–217, 703 A.2d 150, 153 (1997); *see Frank v. Baltimore County,* 284 Md. 655, 661, 399 A.2d 250, 254 (1979). In other words, if the statutory language is clear, ordinarily this Court's function is simply to construe the provision in accordance with the plain meaning of the text. The words of the statute should be given their ordinary and commonly understood meaning. *Lerman v. Heeman,* 347 Md. 439, 443, 701 A.2d 426, 428 (1997). In addition, because the statute is in derogation of the common law, it should be strictly construed. *MacBride v. Gulbro,* 247 Md. 727, 729, 234 A.2d 586, 588 (1967); *see United States v. Bowman,* 358 F.2d 421, 423 (3rd Cir.1966) (strictly construing Pennsylvania statutory accountant-client privilege); *McNair v. District Court,* 110 Nev. 1285, 885 P.2d 576, 578 (1994) (construing accountant-client privilege narrowly).

Client communications to accountants are privileged in approximately one-third of the states. *See* 8 WIGMORE, EVIDENCE § 2286, at 533–34 n. 22 (McNaughton rev. ed. 1961 & 1998 Supp.) (citing and summarizing statutes); Francis M. Dougherty, Annotation, *Privileged Communications Between Accountant and Client,* 33 A.L.R.4th 539 (1984 & Sept. 1997 Supp.) (listing judicial decisions recognizing existence of accountant-client privilege by virtue of specific statutory enactment); *see generally* 1 McCORMICK ON EVIDENCE § 76.2, at 288 (J. Strong ed. 4th ed.1992). At common law, no accountant-client privilege existed, perhaps because the activities of the accounting profession were very limited in the seventeenth and eighteenth centuries when the common law recognized many of the present day privileges. *See In re Special Investigation No. 202,* 53 Md.App. 96, 100, 452 A.2d 458, 460 (1982).

■ The purpose of the accountant-client privilege is to encourage free and open communication between the accountant and the client. *See id.* at 103, 452 A.2d at 462 (noting that the purpose of the privilege is to "protect the expectation of privacy of individuals in matters involving contracts, domestic disputes, and other civil matters and equity controversies"); *see also Gearhart v. Etheridge,* 232 Ga. 638, 208 S.E.2d 460,

461 (1974) (noting that the purpose of the privilege is to ensure an atmosphere where the client will transmit all relevant information to the accountant without fear of future disclosure, thereby enabling the accountant to adequately perform his or her services); *People v. Paasche*, 207 Mich. App. 698, 525 N.W.2d 914, 918 (1994) (noting that the purpose behind the Michigan statute recognizing the accountant-client privilege "is to protect from disclosure the substance of the information conveyed by the client to the accountant"). In creating the privilege, there is no indication that the Legislature intended to create an absolute privilege. Indeed, the privilege is subject to the statutory exceptions found at § 9–110(b), which provide that the privilege does not affect the bankruptcy laws, the criminal laws, or a regulatory proceeding by the Public Accountancy Board.

 Section 9–110 regulates the conduct of the accountant, not the client, and is implicated when the accountant either voluntarily seeks to disclose, or is commanded to disclose, matters covered by the privilege. The plain language of the statute creating the privilege states that the accountant cannot disclose the contents of any communication or any information derived from the client without express permission by the client, by the personal representative of the client, or by the successor in interest of the client. BLACK'S LAW DICTIONARY 580 (6th ed.1990) defines the word "express" as follows: "Clear; definite; explicit; plain; direct; unmistakable; not dubious or ambiguous. Declared in terms; set forth in words. Directly and distinctly stated. Made known distinctly and explicitly and not left to inference ... Manifested by direct and appropriate language, as distinguished from that which is inferred from conduct. The word is usually contrasted with 'implied'." Similarly, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 803 (3rd ed.1963), defines "express" as "directly and distinctly stated or expressed rather than implied or left to inference."

 The language of § 9–110 is clear and unambiguous. The statute dictates that, absent a valid waiver which we

discuss, *infra,* protected information may not be released by the accountant without the express permission of the client. Permission may not be implied. Courts may not create ambiguity in a statute where none exists, nor as a general rule, "surmise a legislative intention contrary to the plain language of a statute or insert exceptions not made by the legislature." *Coleman v. State,* 281 Md. 538, 546, 380 A.2d 49, 54 (1977); *see Wright,* 348 Md. at 217, 703 A.2d at 153.

■ Gussin did not expressly permit Ernst & Young to disclose the information sought by Sears. Taken in the context of the deposition and the lawsuit as a whole, it is clear that Gussin did not intend to reveal any information or documents that he was not required by law to disclose. Thus, Gussin's actions cannot be interpreted as express permission. Gussin's statement, "you could ask them," merely permitted Sears to inquire whether Ernst & Young held the documents, but did not permit Ernst & Young to disclose the contents of those documents. *See Harrison v. State,* 276 Md. 122, 150–51, 345 A.2d 830, 846 (1975) ("[W]e do not think that [Harrison]'s reply to the trial court when he stated 'I told my lawyer all about it' in response to the court's question concerning any attempt to further converse with [a witness], can be considered as constituting waiver of the [attorney-client] privilege. It was a general statement which did not disclose, or purport to disclose what words were used—or what the conversation was—nothing which was confidential was thereby revealed."). Nothing in Gussin's statement expressly permitted disclosure of the contents of any communication.

Sears argues that Gussin's express permission to speak to his accountants was a partial disclosure of privileged information, and as such, waives the statutory privilege notwithstanding the absence of express permission. *See Tofani v. State,* 297 Md. 165, 173, 465 A.2d 413, 417 (1983) ("Where . . . the reporter voluntarily and intentionally revealed the names of her sources in published news articles, nothing remains to be protected under the statute."). Sears argues that it is unfair to permit Gussin to insist on the privilege after such disclo-

sure. Sears also contends that because Gussin "chose to be an obstructionist," and failed to answer the questions truthfully and in a straightforward manner, he waived the privilege by his actions. In response, Ernst & Young contends that unlike other privileges, such as the attorney-client and doctor-patient privileges, the accountant-client privilege may be expressly waived only by the client.

The accountant-client privilege, like all other personal privileges, may be waived by the client's conduct. *See, e.g., Tofani,* 297 Md. at 173, 465 A.2d at 417 (holding that reporter shield law, § 9–112 of the Courts & Judicial Proceedings Article, may be waived when reporter acts in a manner inconsistent with the statutory privilege or the intention to rely on it); *Harrison,* 276 Md. at 137–38, 345 A.2d at 839 (recognizing waiver by implication for attorney-client privilege); *see also In re Matthew R.,* 113 Md.App. 701, 707–09, 688 A.2d 955, 957–58 (1997) (addressing argument regarding waiver by implication for psychiatrist-patient privilege); LYNN MCLAIN, MARYLAND EVIDENCE § 501.1, at 464 (1987) ("All privileges may be waived, but only by their holder...."). For example, the privilege may be waived by the client's disclosure to third parties. The accountant-client privilege may also be waived by issue injection by the client in a lawsuit, when the client injects the professional activity or the advice of an accountant as an issue in a particular case. *See In re Hillsborough Holdings Corp.,* 176 B.R. 223, 238–40 (M.D.Fla.1994).

Ernst & Young's broad interpretation of the privilege is not supported by law or policy. Were we to accept Ernst & Young's argument that the accountant-client privilege can be waived *solely* by express permission, the result would be to elevate the accountant-client privilege to a higher status than most other privileges in Maryland, which may be waived by implication. The fair inference is that the General Assembly did not intend such an anomalous result when it enacted the accountant-client privilege. *See Lewis,* 348 Md. at 662, 705 A.2d at 1135 ("We shall not interpret a statute to produce unusual or extraordinary results, absent the clear legislative intent to enact such a provision."). Accordingly, we conclude

that, although § 9–110 of the Courts & Judicial Proceedings Article regulates the circumstances under which an *accountant* must or must not divulge information possessed on behalf of a client, that statutory provision does not provide the governing principles regarding the *client's waiver* of the privilege. To discern the latter, we instead turn to common law principles regarding waiver. *See* McLAIN, *supra*, § 511.1, at 596 ("Like other privileges, the accountant-client privilege may be waived by its holder's disclosing or consenting to disclosure of the privileged information to third parties outside the context of the privileged relationship.") (footnote omitted).

In *Savino v. Luciano,* 92 So.2d 817 (Fla.1957), the Supreme Court of Florida reached a similar conclusion. In that case, the plaintiff ("Savino") filed a suit against the defendant ("Luciano") for an accounting of profits allegedly due Savino under an employment contract. *Id.* at 818. Luciano filed both a cross-claim and a counterclaim, alleging that Savino had embezzled funds and "had manipulated the books to show a net income where none existed." *Id.* In conjunction with his claims, Luciano averred that it would be necessary to engage a certified public accountant to "reconstruct the books" of the business. *Id.* Accordingly, Luciano requested an award of damages as compensation for the fee charged by the accountant. *Id.*

Before trial, Savino sought discovery of the audit and report prepared by the accountant on behalf of Luciano. The latter resisted, on the ground that the accountant's audit and report were privileged and confidential. At that time, Florida recognized an accountant-client privilege as follows:[3]

> "[N]o ... certified public accountant or public accountant shall be permitted to testify with respect to any of said matters, except with the *consent in writing* of [the] client or [the client]'s legal representative."

---

**3.** Since the decision in *Savino v. Luciano,* 92 So.2d 817 (Fla.1957), the accountant-client privilege has been substantively modified under Florida law. That privilege is now codified under two similar, yet not identical, statutory provisions. *See* FLA. STAT. § 90.5055 (1997 Supp.); FLA. STAT. § 473.316 (1997 Supp.).

Fla. Stat. § 473.15 (1955) (emphasis added). In resolving Luciano's claim of accountant-client privilege, the court noted that "[a]s in the case of all personal privileges, the accountant-client privilege may be waived by the client." *Savino*, 92 So.2d at 819. Although the audit and report compiled by Luciano's accountant might, ordinarily, have been privileged under Florida law, the court reasoned that proof of Luciano's allegations would necessarily require the introduction of the audit and report into evidence. *Id.* The court held that Luciano had "either expressly or impliedly waived the right to insist upon the privileged nature . . . of the audit and report." *Id.* The Supreme Court of Florida concluded that, regardless of the degree of confidentiality generally afforded the client of an accountant, if a party engaged in activity which was clearly inconsistent with the exercise of a legal privilege, then that party waived the right to claim the privilege through his or her conduct.

Sears bears the burden of establishing any waiver of the accountant-client privilege. As a general rule, a party does not waive the privilege by denying the opposing party's accusations, or by acting in an obstreperous manner. In addition, a " 'Court cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant.' " *In re Hillsborough Holdings Corp.*, 176 B.R. at 239 (citing *Cox v. United States Steel & Carnegie*, 17 F.3d 1386, 1418 (11th Cir.1994) (quoting *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 415 (D.Del.1992)), *cert. denied*, 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995)). Although it has often been said that "[w]hen a party himself ceases to treat a matter as confidential, it loses its confidential character," *Savino*, 92 So.2d at 819, neither Gussin's conduct nor his statement suggest in any way that Gussin ceased to treat the documents as confidential. Merely "being difficult" is insufficient to waive the privilege. Moreover, Gussin's statement permitting Sears to ask Ernst & Young if it had the records was not in the nature of a disclosure such that fairness would require that the privilege cease. We hold that Gussin did not waive the accountant-client privilege.

## IV.

Sears next argues that Gussin cannot rely on the accountant-client privilege because there is evidence of fraudulent activity by Gussin. Sears relies on the Court of Special Appeals opinion engrafting a "crime-fraud" exception on the statutory accountant-client privilege. *See Dixon,* 72 Md.App. 620, 531 A.2d 1318 (1987), *cert. denied,* 311 Md. 557, 536 A.2d 664 (1988). Sears argues that the fraud exception recognized in *Dixon* should be extended to apply to the facts of this case.

In *Dixon,* the Court of Special Appeals considered the applicability of the "fraud exception" to accountant-client communications and noted that "[f]ederal courts have frequently held that communications that would otherwise be protected by the attorney-client privilege are not protected if they involve client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *Id.* at 639, 531 A.2d at 1327–28. The intermediate appellate court concluded that the same policy considerations underlying the decision to invalidate the accountant-client privilege in the face of potential criminal violations apply when the client may be involved in the perpetration of a fraud.[4] *Id.* at 640, 531 A.2d at 1328.

This Court has not had the occasion to consider whether a fraud exception is applicable to the accountant-client privilege. In this case, we need not reach the question of whether a

---

4. In *Dixon v. Bennett,* 72 Md.App. 620, 531 A.2d 1318 (1987), *cert. denied,* 311 Md. 557, 536 A.2d 664 (1988), the appellant, an unsecured creditor of Richard Rice (a third party to the suit) alleged that transfers of funds made by Rice to the appellee (Rice's accountant), were fraudulent under the Maryland Uniform Fraudulent Conveyance Act, then codified in the Commercial Law Article of the Maryland Code (1975, 1983 Repl.Vol., 1987 Supp.). Dixon filed suit to recover assets transferred fraudulently or damages. During the discovery stage of the litigation, appellant sought production of documents from Rice's accountant. The court ordered production of those documents and the accountant sought a protective order, which was granted, based on the accountant-client privilege.

The Court of Special Appeals held "[t]he rationale supporting the Federal repudiation of the attorney-client privilege under fraudulent circumstances is equally persuasive when applied to the accountant-

"fraud exception" to the accountant-client privilege exists inasmuch as the facts in this case would not satisfy the application of the exception. Sears argues that it has made a *prima facie* showing of fraud. We disagree.

Sears has not shown that there is a reasonable basis to suspect the perpetration of fraud or that the communications between Gussin and Ernst & Young were in furtherance of any fraud. Sears was unable to show that there was any ongoing fraud, or that there had been any transfer of assets in violation of the Maryland Uniform Fraudulent Conveyance Act or any other violations of the criminal or bankruptcy laws, as was the case in *Dixon*. The mere fact that in 1994, Gussin and his spouse reported $247,787 in investment income and that, in the mid–1980s, Gussin received $6.7 million, but now claims to have no assets, is not an adequate showing by Sears to sustain its burden of pleading a *prima facie* showing of fraud.

## V.

We make no finding as to whether the documents in the possession of Ernst & Young are in fact covered by the

---

client privilege. Communication between an accountant and a client in furtherance of fraudulent or unlawful ends in no way serves to promote informed and intelligent financial advice." *Dixon*, 72 Md.App. at 640, 531 A.2d at 1328. The court in *Dixon* compared the privilege granted to lawyer-client, priest-penitent, and doctor-patient and held that the court should not grant greater protection to the statutorily based accountant-client privilege because the accountant-client privilege by statute is already subject to exceptions based on the criminal and bankruptcy laws of the State. In recognizing the fraud exception to the accountant-client privilege, the court held:

To overcome a claim of privilege using the fraud exception, the seeker of the documents does not have to prove that the fraud has actually taken place. What is required is simply a prima facie showing that the advice related to the documents sought has been obtained in furtherance of a fraudulent activity, or the presentation of a reasonable basis for believing that the objective was fraudulent. *Id.* at 642, 531 A.2d at 1329 (citations omitted). The *Dixon* court reasoned that the purpose of the accountant-client privilege "was not to enable either the client or the accountant to use it as a shield when charged with perpetrating a fraud in violation of the laws of the State." *Id.*

accountant-client privilege. Neither party argued below that the particular documents were not privileged and the trial court did not make any findings of fact on this issue. We note, however, that a client may not immunize otherwise discoverable materials from the reach of another party by transferring possession of those materials to an accountant. *See McNair v. District Court,* 110 Nev. 1285, 885 P.2d 576, 579–80 (1994) (holding that accountant must produce documents because client would be compelled to produce the requested documents); *Paper Corp. of America v. Schneider,* 563 So.2d 1134, 1135 (Fla.Ct.App.1990) (holding that "[f]inancial records and data which are not privileged in the hands of the client cannot be shielded from discovery deposition or subpoena by transferring them to the client's accountant"); *cf. Ashcraft v. Harvey,* 315 So.2d 530, 531 (Fla.Ct.App.1975) (noting that a client's documents must be delivered from attorney if the client would be compelled to give up possession of the documents (citing 8 WIGMORE, EVIDENCE § 2307, at 591 (McNaughton rev. ed.1961))).

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*