Josephine C. VELLONE Individually, as Surviving Spouse of Joseph A. Vellone, as Trustee of the Joseph A. Vellone Revocable Trust, as Trustee of the Josephine C. Vellone Revocable Trust, and as Personal Representative of the Estate of Joseph A. Vellone, Plaintiff,

v.

FIRST UNION BROKERAGE SERVICES, INC., et al., Defendants.

No. CIV. A. PJM 00–159.

United States District Court, D. Maryland.

Aug. 30, 2001.

Eva Petko Esber, Esquire, Michael J. Leotta, Esquire, Mauita Elaine Horn, Esquire, Williams & Connolly, Julia B. Shelton, Esquire, Washington, D.C., for Plaintiffs.

Stephen J. Hughes, Esquire, Michael S. Barranco, Esquire, Treanor Pope & Hughes, Towson, Clifford B. Geiger, Esquire, Kollman & Sheehan, Baltimore, Grady C. Frank, Jr., Esquire, LeClair Ryan, Alexandria, VA, Kurt Berlin, Esquire, Jeffrey Carl Tuckfelt, Esquire, Obergh & Berlin, Washington, D.C., for Defendants.

### OPINION

MESSITTE, District Judge.

This is a lawsuit brought by former customers of a brokerage house against the brokerage house, one of its employees, and certain individuals and entities who allegedly received improper control over the former customers' assets.[1] Earlier this year, Plaintiff Josephine C. Vellone filed a Motion to Compel Enforcement of Subpoenas that sought tax and related records of Defendants Ennis and Ritza Whatley, Sapphire Ministries, Inc., and Kids in His Care Christian Day Care Center, Inc. Defendants opposed the Motion on the basis of accountant-client privilege. Soon after, the Court entered an Order granting the Motion in part and denying it in part, but deferring the filing of its Opinion in the matter. The Court now VACATES its earlier Order and enters a new Order GRANTING the Motion in full. The Court submits this Opinion in explanation of its ruling.

### I.

Vellone served her first request for production of documents on Defendants, seeking, among other things, all their "tax returns and related documents for the tax years 1997 through the present, including but not limited to income tax returns, draft returns, computer printouts, handwritten notes, bank statements, deposit slips, cancelled checks, trust instruments, powers of attorney, wire transfer instructions, evidence of wire transfers, correspondence to or from the Internal Revenue Service, W–2 forms, W–4 forms, and/or any other document or instrument used in or related to the preparation of your tax returns." This document request was the subject of the motion to compel which the Court granted last Fall.

In response, Defendants produced selected tax returns which they believed were "all [of the] requested tax returns in their possession." Vellone, however, noted that Defendants had not produced any Form 1099s or W–2s, nor had they provided the attachments and schedules which would have been submitted with the original returns.[2]

In an attempt to procure the documents that had not been produced, Vellone caused document subpoenas to be served on two accounting firms used by one or more of the Defendants—Berman, Goldman & Ribakow ("BGR") and Hunt, LaPorte & Associates ("HLA"). Both firms refused, however, to provide the requested documents, citing, without more, the accountant-client privilege. The Court considers the propriety of that refusal.

### II.

Since Vellone's action is based upon diversity jurisdiction, see 28 U.S.C. § 1332, the Court looks to Maryland law to determine the applicability and scope of the accountant-client privilege in this case. See Fed.R.Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of

---

1. The suit against the brokerage house and its employee has been referred to arbitration pursuant to an agreement signed by the former customers.

2. Defendants claimed that the 1099s and W–2s were not available either from them or their accountants.

decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.").

Section 9–110(b) of the Courts and Judicial Proceedings Article of the Maryland Code establishes the parameters of the privilege in Maryland. It reads:

> Except as provided in subsections (c) and (d) of this section or unless expressly permitted by a client ... a licensed certified public accountant or firm may not disclose:
>
> (1) The contents of any communication made to the licensed certified public accountant or firm by a client who employs the licensed certified public accountant or firm to audit, examine, or report on any account, book, record, or statement of the client;
>
> (2) Any information that the licensed certified public accountant or firm, in rendering professional services, derives from:
>
> (i) A client who employs the licensed certified public accountant or firm; or
>
> (ii) The material of the client.[3]

On its face, the statute appears to protect from disclosure the contents of *any and all* communications made to a licensed certified public accountant or firm by a client who employs the accountant or firm to audit, examine, or report on any account, book, record, or statement of the client as well as *any and all* information that the accountant or firm, in rendering professional services, derives from the client or the material of the client.

The language of the statute, it will be noted, contains no reference whatsoever to communications made *confidentially*, but appears instead to be entirely open-ended. Read literally, Section 9–110(b)(1) could be understood to protect communications made in the presence of third-parties or other communications that the client never intended to be confidential. Similarly, Section 9–110(b)(2) could be interpreted to protect any part of the accountant's work product, so long as it was derived from the client directly or from the client's material, even if confidential treatment was never intended. The problem is that reading the statute this way would be sharply at odds with the traditional public policy objectives of evidentiary privileges in general, including, perhaps most significantly, the attorney-client privilege. *See* 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5427 (1980) (noting that federal courts should attempt to construe state privilege statutes by analogy to the other professional privileges).

But, in fact, Maryland courts have been reluctant to elevate the accountant-client privilege "to a higher status than most other privileges in Maryland." *Sears, Roebuck & Co. v. Gussin*, 350 Md. 552, 714 A.2d 188, 194 (1998) (citations omitted); *see also Dixon v. Bennett*, 72 Md.App. 620, 531 A.2d 1318 (Spec.App.1987) ("We do not propose to grant greater protection to the [accountant-client privilege] than that recognized for [other professional relationships]."); *In re A Special Investigation No. 202*, 53 Md.App. 96, 452 A.2d 458, 462 (Spec.App.1982) ("[W]hen examined in light of the other privileges, *e.g.*, the lawyer/client privilege, the doctor/patient privilege, and the priest/penitent privilege, it is obvious that the latter are absolute privileges while the accountant/client privilege is [not].").

Accordingly, notwithstanding the absence of any reference to confidentiality in the statute, Maryland courts have held that a gloss of confidentiality should be placed upon it. As the Maryland Court of Appeals has stated, the purpose of the accountant-client privilege "is to encourage free and open communication between the accountant and the client." *Gussin*, 714 A.2d at 193 (citations omitted). And as the Maryland Court of Special Appeals has added, the adoption of an accountant-client privilege in Maryland reflects "a strong public policy in favor of

---

**3.** Section 9–110(d) provides, however, that:

The privilege against disclosure required by subsection (b) of this section does not affect:

(1) The bankruptcy laws;

(2) The criminal laws of the State; or

(3) A regulatory proceeding by the State Board of Public Accountancy[.]

accountant/client *confidential* communications." *In re Special Investigation No. 202*, 452 A.2d at 462, *cited with approval in Gussin*, 714 A.2d at 193 (emphasis added). The accountant-client privilege, the Court of Special Appeals explains, "was intended to protect the expectation of privacy of individuals in matters involving contracts, domestic disputes, and other civil and equity controversies . . . ." *Id.*[4]

▆▆ Restated to incorporate the gloss of the cases, the privilege may thus be said to cover any *confidential communication*[5] made to a licensed certified public accountant or firm by a client who employs the accountant or firm to audit, examine, or report on any account, book, record, or statement of the client. Second, the statute protects from disclosure any information that the accountant or firm, in rendering professional services, derives from the client *in the course of a confidential communication with the client*, or from material of the client *given to the accountant in the course of a confidential communication.*[6] Necessarily, then, the

inquiry becomes fact-specific to the individual-case.

### III.

The Court turns to the case at hand. Preliminarily, the Court notes that the party asserting the privilege bears the burden of proving that the particular communication or information is privileged under the statute. *Cf.* Fed.R.Civ.P. 26(b)(5) ("When a party withholds information otherwise discoverable under these rules by claiming that it is privileged . . ., the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged . . ., will enable other parties to assess the applicability of the privilege . . . .").

Vellone seeks tax and related documents, *inter alia*, in connection with allegations that Defendants engaged in conversion, were unjustly enriched, and should be subjected to the imposition of a constructive trust. Such information—including all attached schedules, drafts, and such—would clearly appear

---

4. Wright and Graham observe that "the arguments for recognition of an accountant's privilege parallel those advanced on behalf of the other professional privileges." Wright & Graham, *supra*, § 5427. For example, proponents of the privilege argue that accountants are under an ethical obligation to preserve the confidences of their clients, that confidentiality is essential in the professional relationship, and that courts should honor the pledge of confidentiality because of the public importance of sound accounting practices. *See id.* (citations omitted). The accountant-client privilege, with its emphasis on safeguarding a confidential relationship, is said to share its public policy roots with the attorney-client privilege. *See McNair v. Eighth Judicial Dist. Court of Nevada*, 110 Nev. 1285, 885 P.2d 576, 578 (1994) (citing 1 Charles T. McCormick, *McCormick on Evidence* § 76.2, at 288 (4th ed.1992)).

5. In the attorney-client context, "[i]n order for communications to be protected, they must have been made in confidence. Communications that are made with the intent that they be disclosed to third parties outside the attorney-client relationship are not privileged. * * * The attorney-client privilege protects only confidential communications between attorney and client. It does not protect information gained from other sources. Nor does it protect non-confidential communications or non-communications between attorney and client." 6 Lynn McLain,

*Maryland Evidence* §§ 503.5, 503.6 (2d ed.2001) (footnotes omitted).

6. Any analogy between Section 9–110(b)(2) and the work-product doctrine of the attorney-client setting will not bear scrutiny. The work-product doctrine of the attorney-client setting is intended to protect, *inter alia*, the professional efforts of the attorney made in anticipation of litigation. It prevents the attorney's adversary from unfairly reaping the rewards of those efforts. *See Hickman v. Taylor*, 329 U.S. 495, 510–12, 67 S.Ct. 385, 91 L.Ed. 451 (1947). No comparable consideration exists in the accountant-client setting, *i.e.*, there is no third-party involved to take unfair advantage of the accountant's mental processes. This may explain why the Maryland courts, as discussed *supra*, speak exclusively about the accountant-client privilege in terms of confidentiality.

On the other hand, this does not mean that an accountant, working as the representative of a client in anticipation of litigation, would not be covered by the work product protection provided by Federal Rule of Civil Procedure 26(b)(3). *See, e.g., United States v. Adlman*, 134 F.3d 1194, 1204 (2d Cir.1998) (extending work product protection to memorandum prepared by taxpayer's outside accounting firm at the request of taxpayer's tax attorney to evaluate the tax consequences of proposed corporate reorganization upon expected litigation with Internal Revenue Service).

calculated to lead to relevant information, if indeed it does not comprise relevant information in and of itself. *See* Fed.R.Civ.P. 26(b)(1). In short, at first blush the information would certainly be discoverable. But the third-party accounting firms, BGR and HLA, have invoked the accountant-client privilege as a blanket protection against having to produce the requested documents. How is the matter to be resolved?

Practically speaking, Defendants and the accounting firms have simplified the Court's task immeasurably since they have failed to comply with Federal Rule of Civil Procedure 26(b)(5), which requires that they describe the nature of the documents such that Vellone can assess the applicability of the privilege. In other words, the Court plainly could order the production of all the requested documents on that basis alone. There are, however, a few observations to be made before the Court does so.

▮ As an initial matter, the Maryland Court of Appeals has ruled that "a client may not immunize otherwise discoverable materials from the reach of another party by transferring possession of those materials to an accountant." *Gussin,* 714 A.2d at 196 (citing *McNair,* 885 P.2d at 579–80 (holding that accountant must produce documents because client would be compelled to produce the requested documents) and *Paper Corp. of America v. Schneider,* 563 So.2d 1134, 1135 (Fla.Dist.Ct.App.1990) (holding that "[f]inancial records and data which are not privileged in the hands of the client cannot be shielded from discovery deposition or subpoena by transferring them to the client's accountant")).[7] Accordingly, several documents in the hands of the accountants are clearly not subject to any kind of privilege. These include: Defendants' final income tax returns, final gift tax returns, 1120 S forms, K–1 schedules, account statements, confirmation tickets, bank statements, brokerage documents, account opening cards, deposit slips, cancelled checks, trust instruments, powers of attorney, wire transfer instructions, evidence of wire transfers, correspondence to or from the Internal Revenue Service ("IRS"), W–2 forms, and W–4 forms. The Court holds that Vellone is entitled to such of these documents as may be in the accountants' hands.

As the Maryland courts have interpreted the privilege, a litigant is also entitled to certain other material, even if it incorporates the mental impressions, conclusions, or opinions of the accountants. While Section 9–110(b)(2) speaks in terms of "information derived from," a concept that would literally be broad enough to encompass any part of an accountant's work product, as the Court has observed, what determines whether an accountant's work product is privileged is whether the accountant derived information from a *confidential communication* with the client or from material given to the accountant in the course of a *confidential communication.* Only such accountant work product that has been derived under circumstances of confidentiality is protected by the statute.

▮ Vellone, therefore, is entitled to discovery of any draft tax returns, computer printouts, handwritten notes, correspondence, or other documents or instruments used in or related to the preparation of tax returns pertaining to Defendants in the possession of the accountants, provided that the documents do not fall within the confidentiality parameters set forth above. However, since the burden was upon Defendants and their accountants under Federal Rule of Civil Procedure 26(b)(5) to demonstrate that any withheld materials were subject to the privilege, and, since they failed to do so, the Court will order the production of all the requested documents without any limitation based on confidentiality.

In sum, the Court will GRANT Plaintiff's Motion to Compel Enforcement of Subpoenas. A separate Order, superseding the Order entered on April 16, 2001, implements this decision.

---

**7.** This basic concept is rooted in the attorney-client privilege, *see Ashcraft v. Harvey,* 315 So.2d 530, 531 (Fla.Dist.Ct.App.1975) (citing 8 *Wigmore, Evidence* § 2307, at 591 (McNaughton rev. 1961)), and helps to prevent a client from asserting a privilege as a means of evasion.